RABORG *vs.* THE BANK OF COLUMBIA.—June, 1827.

W drew a promissory note, which did not bear date at any particular place, but was made negotiable at the plaintiffs' bank: it was in favour of C R & Son, or order, and by the defendant, in their name, specially endorsed to the plaintiffs, whose bank was at G    Not being paid at maturity, on the day after the third day of grace, it was presented to an agent of W at the said bank, appointed for the purpose of attending to the payment or renewal of W's notes held by the plaintiffs for payment, which being refused, notice of its dishonour was put into the post office at G. directed to C R, (the defendant,) at B, where he lived.    W, when the note became due, lived at P G.    It appeared that it was the custom at G, to demand payment of notes on the fourth day after they became due.—*Held*, that the defendant was liable on his endorsement to the plaintiffs.

In an action on a promissory note drawn in favour of C & R and endorsed by R in their names, to P, the writ was against R *as surviving partner of* C, but the declaration was not.    It was proved that C died before the

4

making of the note. Judgment was rendered against R without stating, as surviving partner. On appeal—Judgment affirmed.

Where the appellate court had reversed a judgment and awarded a *procedendo,* and it afterwards, during the same term, appeared that there was a material mistake in the record upon which they acted, they struck out the judgment, &c. and ordered a writ of diminution (*note.*)

· APPEAL from *Baltimore* County Court. This was an action of *assumpsit,* in which the writ was sued out against *Christopher Raborg,* (the appellant,) as surviving partner of *Christopher Raborg.* The declaration contained *four counts.* The *first count* averred that *Jacob Wagner* on the 23d of January 1817, at *George-Town,* in the District of *Columbia,* made a promissory note, bearing date the day and year aforesaid, and thereby promised to pay *Christopher Raborg* and *Christopher Raborg,* junior, by the name of Messrs. *C. Raborg & Son,* or order, $1500, for value received, negotiable at the Bank of *Columbia;* that the payee endorsed the said note to the plaintiffs (the appellees.) The *second count* was like the first, except that it described the note as payable to the said *Christopher Raborg,* by the name of *Christopher Raborg* and *Son,* by which name and style the said *Christopher Raborg* then and there carried on business and trade as a merchant, &c. The *third count* was like the first, except that it described the note as payable to one *Christopher Raborg,* surviving partner of *Christopher Raborg,* by the name of *Christopher Raborg* and *Son.* The *first count* omitted to aver the presentation of the note for payment. The *second* and *third counts* averred it to have been presented for payment to *Wagner* on the 28th of March 1817. The *fourth count* was for money had and received by the defendant, to the use of the plaintiffs. The general issue was pleaded.

At the trial the plaintiffs offered in evidence the following promissory note, which was admitted to be drawn by *Jacob Wagner,* and endorsed by *Christopher Raborg,* the defendant, by the name of *Christopher Raborg & Son:*

"$1500. 23 Jan'y. 1817.

Sixty days after date, I promise to pay Messrs. *C. Raborg & Son,* or order, fifteen hundred dollars, for value rec'd, negotiable at the Bank of *Columbia.* *Jacob Wagner.*

Credit the drawer. *C. R. & Son.*"

(Endorsed.) "Pay the contents of the within note to the President, Directors and Company of the Bank of *Columbia*, or order, value received.    *Christopher Raborg & Son.*"

The plaintiffs also offered evidence, that on the 28th day of March, in the year 1817, payment of the said note was demanded from *Daniel Kurtz*, at the banking-house of the plaintiffs in *George-Town*, in the District of *Columbia*, the teller of the Bank of *Columbia* aforesaid, and that the said *Jacob Wagner* resided at that time, and for some time before, in *Prince-George's* county, in the state of *Maryland*, and that said *Kurtz* was agent for said *Wagner*, in attending to the payment and renewal of the notes of said *Wagner*, held by said plaintiffs, or deposited with them for collection, and that upon the said demand the said note was not paid, and on the same day a letter was put into the post office at *George-Town*, by the agent of the plaintiffs, directed to said *Christopher Raborg*, at *Baltimore*, where he resided, informing him that the said note was not paid, and that he would be looked to for payment thereof.   And also gave evidence, that it had been the custom of the plaintiffs ever since their incorporation, and of all the other banks and merchants in the District of *Columbia*, to demand payment of notes on the fourth day after they became due, and not on the third.   And the plaintiffs offered no evidence to show a personal knowledge by the defendant of the usage aforesaid other than the uniformity and notoriety of the usage for the time aforesaid.   The defendant proved that *Christopher Raborg*, senior, the father of the present defendant, died in the month of June, 1815, and before the making and delivery of the said promissory note on which this action is brought.   The plaintiffs then moved the court to direct the jury, that if they believed the evidence so offered by the plaintiffs, they were entitled to recover.   Which direction and opinion the Court, [*Dorsey*, Ch. J. and *Hanson* and *Ward*, A. J.] accordingly gave.   The defendant excepted; and the verdict and judgment being against him, he appealed to this court.

The cause was argued at June term 1825, before BUCHANAN, Ch. J. and EARLE, MARTIN, and STEPHEN, J.

*Mayer,* for the Appellant, contended, that the judgment ought to be reversed.

1. Because the judgment could, if at all, have been against the defendant, only as a surviving partner, agreeably to the writ.

2. Because the declaration does not aver the partnership of the *Christopher Raborgs,* or the survivorship of the defendant.

3. Because upon the form and terms of the prayer the court below were not authorised to direct the jury to find the verdict which they gave.

4. Because demand of payment of the note was not made in time, and of the proper person, or at the proper place.

On the *first* and *second* points, he referred to 1 *Chitty's Plead.* 294. *Cabell vs. Vaughan,* 1 *Saund.* 291, g. *(note.)* *Jell vs. Douglas,* 6 *Serg. & Lowb.* 451. He contended that the defects in the declaration were not cured by the act of 1809, *ch.* 153, *s.* 2.

On the *third* point, he contended, that as there was no proof of partnership, the direction of the court was too general; they should have given a special direction.

On the *fourth* point he contended, that the demand on the maker of the note was not made in time—of the proper person, and at the proper place. The demand was not in time, being made on the fourth day after the day of payment. In *Renner vs. Bank of Columbia,* 9 *Wheat.* 582, the decision went upon the ground that the party had knowledge of the custom in the District of *Columbia* to protest on the fourth day. The custom is not considered as a part of the consideration of the note, or forming any part of the contract. The days of grace are given under the usage as an indulgence in extending the time when the note becomes due. It is to rebut the evidence of negligence in presenting the note for payment. A custom like this is in derogation of the common law, and is to be construed strictly. The custom is to be proved, and it must be shown that the party had knowledge of, and was bound by it. In *Bank of Columbia vs. Magruder,* 6 *Harr. & Johns.* 172, this court decided, that if the party knew the custom, he was bound by it. Here the court below went upon the notoriety

of the custom. Both the maker and endorsers of the note resided out of the District of *Columbia*, and the custom did not bind them. The place where the note was drawn is not stated in the note. There was no privity between the maker and endorsers, and the plaintiffs, (the endorsees.) The law of this state is to govern as to the days of grace to be allowed. *Robinson vs. Bland*, 2 *Burr.* 1077. Although the note is expressed on its face to be negotiable at the *Bank of Columbia*, yet it is not to be implied that it is to be paid there. The contract is to be performed in this state where the maker and endorsers resided, and where the holders seek to obtain payment. *Mandeville vs. Union Bank of George Town*, 9 *Cranch*, 9. If the endorser is bound by the custom, yet the demand of payment was not made of the proper person. There was no proof of a personal demand of the maker; it was merely made of *Kurtz*, who is said to be his agent. Where a note is made payable at a particular place, it constitutes a part of the contract, on the ground that the parties agreed it should be paid there; yet the law is that the demand of payment must be made of the drawer personally. Where there is a legally constituted agent, a demand of him is considered different, as in *Philips vs. Astling*, 2 *Taunt.* 206, where the agent was the acceptor of the bill.

*G. H. Steuart*, for the Appellees. On the *first* and *second* points, he cited 1 *Chitty's Plead.* 37. *Eccleston vs. Clipsham*, 1 *Saund.* 154, *(note* 1. *)* *Slipper vs. Stidstone*, 1 *Esp. Rep.* 47. *Gow on Part.* 208, 209. *Goelet vs. M·Kinstry*, 1 *Johns. Cas.* 405. *Wood vs. Braddick*, 1 *Taunt.* 104. *Smith vs. Ludlow*, 6 *Johns. Rep.* 667. *Spalding vs. Mure*, 6 *T. R.* 363.

On the *fourth* point. In *Jackson vs. The Union Bank of Maryland*, 6 *Harr. & Johns.* 150, this court decided that the party dealing with a particular bank was bound to notice the custom prevailing in the place where the bank is established. So here the maker and endorsers of the note in question, transacting business with the Bank of *Columbia*, were bound to notice the custom prevailing at that bank. Here the note was made negotiable at the *Bank of Colu......a*, and it was bound by all the consequences which flow from the custom of that

bank. Usage must be respected in transactions of this nature. *Halsey vs Brown*, 3 *Day's Rep.* 349. The non-residence of the drawer and endorser does not affect the case. *M'Gruder vs. Bank of Washington*, 9 *Wheat.* 598. In *The Bank of Columbia vs. Magruder*, 6 *Harr. & Johns.* 172, this court said, that knowledge of the custom must be known to the party, yet they did not say how that knowledge was made to apply. Here the note was made negotiable at the *Bank of Columbia*, showing that it was to come under the usage and custom adopted by that bank, and existing in the District of *Columbia*, in the collection of the notes when they became payable. The *lex loci* is to govern. Here, by the note, it is plain as to where it was to be paid. The contract was executed with reference to its performance in the District of *Columbia*. The demand was made on the agent indicated by the drawer himself. He could not take advantage of the demand not having been legally made, when he directed it should be made of his agent. *Philips vs. Astling*, 2 *Taunt.* 206.

*F. S. Key*, on the same side. The validity of the local customs in the District of *Columbia* has been established both in the supreme court of the *United States* and in this court. The usage is not contrary to the law of the land. Where this usage of four days of grace prevails, it is to be regarded and sanctioned in the same manner as the usage of three days of grace prevailing in other places. The three days of grace, it has been said, is a sort of indulgence. At common law, the note is due at the end of the time stipulated: but usage has given three days of grace; so that a note for 60 days is a note *for 63* days. It is so settled in *Renner vs. Bank of Columbia*, 9 *Wheat.* 585. It is a contract to pay on the 63d day. If within the usage of the District of *Columbia*, it is then 64 days; and the endorser is not liable until the maker makes default, and that is at the end of the 64th day. Here the contract was made with a view to its performance where the four days of grace prevailed. The parties to a contract, no matter where they reside, may make the performance of it where they please. Where then did the parties look to its performance, when they made this contract? No matter where the note was endorsed,

it was to be performed where the place of business of the drawer was. Before the endorser is answerable the drawer must be put in default, and to put him in default, it must be the non-fulfilment of his contract according to the usage of the place where it was to be performed. The presumption is, that the endorser knew where payment was to be demanded. Every person who takes a note is presumed to know where payment of it is to be demanded. Here the payment was to be demanded in the District of *Columbia,* and if demandable there, it was payable there. The contract of the maker was to pay the note at the end of 64 days; and the contract of the endorser was, that if the maker did not then pay, he would. This too was accommodation note for the benefit of the maker. The endorsing of the note was a letter of credit. *Violett vs. Patton,* 5 *Cranch,* 150. The note was made negotiable at the *Bank of Columbia,* which shows the intention of the parties; and the note was discounted at that bank for the benefit of the maker. Every endorser is considered as a drawer; and the defendant is placed here as the drawer of the note, and to stand in his place. Where a note is to be discounted at a bank, it is different from an ordinary note, which is not discounted, but to be collected. *Yeaton vs. Bank of Alexandria,* 5 *Cranch,* 49. If the demand had been made to this note on the third day, it would be liable to be objected to. The drawer would say it was against the contract—that the note was not due. This objection the endorser would also make. To find out when a note was due, you must look to the place where it was negotiated. But it has been said by the appellant's counsel, that the usage was established only where the parties knew of the custom, and had knowledge of it. This was the case here. By drawing the note, and endorsing, the drawer and endorser are presumed to know the custom. The presumption of knowledge may be made from circumstances. In this case the facts justified the court in giving the direction prayed by the plaintiffs. It is stated in the evidence that the usage was *notorious;* being so, the court did right in their direction to the jury. By endorsing the note it brought notice of the usage to the knowledge of the endorser. As the note was made negotiable at the *Bank of Columbia,* it shows that the maker and endorser were an-

swerable for all the consequences, and they were bound to know of the usage, by having made and endorsed the note. *The Bank of Columbia vs. Okely,* 4 *Wheat.* 236, 243. Knowledge must be inferred from circumstances, and actual knowledge is not necessary to be proved. *Renner vs. Bank of Columbia,* 9 *Wheat.* 582. *Cutler vs. Powell,* 6 *T. R.* 320. *Noble vs. Kenneway,* 2 *Doug.* 511. *Vallance vs. Dewar,* 1 *Campb.* 503, 508, *(and note.) Halsey vs. Brown,* 3 *Day's Rep.* 346. *Smith vs. Wright,* 1 *Caine's Rep.* 43. *The Bank of Utica vs. Smith,* 18 *Johns. Rep.* 230. *Lewis vs. Burr,* 2 *Caine's Cases,* 196. *Turner vs. Mead,* 1 *Stra.* 416. 2 *Chitty's Plead.* 219. *Jackson vs. The Union Bank of Maryland,* 6 *Harr. & Johns.* 150. If the maker of a note appoint a place for demand, a demand there is sufficient to charge the endorser. *Woodbridge vs. Brigham,* 12 *Mass. Rep.* 403.

*Mayer,* in reply. The responsibility of an endorser is *stricti juris.* The three days of grace is stipulated by way of indulgence—a forbearance to demand or sue until three days have elapsed after the note is due. To insist on a countervailing usage, it must be shown that the party to be affected by it had a direct knowledge of the existence of such usage. The usage is not to be viewed as a change of the contract. The note, and the contract in pursuance thereof, was that the note was to be paid in this state, and not in the District of *Columbia,* as no place of payment was designated in the note—the residence of both the maker and endorser being in this state. *Young vs. Bryan,* 6 *Wheat.* 151. The note being negotiable at the *Bank of Columbia,* does not necessarily make it payable at that bank; or that it brought home to the endorser knowledge of the special custom of that bank, that demand of payment was not to be made until the fourth day after the note became due. The note was not payable at the bank, unless it had been so expressed.

*Curia adv. vult.*

At this term,

JUDGMENT AFFIRMED, *(a.)*

*(a.)* See the following case of *The Bank of Columbia vs. Fitzhugh,* where the opinion of the court is given at length on the same question as that raised on the *fourth* point in this case.

There were two other appeals to this court from judgments rendered in *Baltimore* county court, in actions brought by the *Bank of Columbia* against *Rahorg*, on other promissory notes, drawn and endorsed, and payment demanded of the maker on the fourth day after each note became due, as stated in the above cause, except that it appeared by the record in one of the cases, that the endorsement of one of the notes sued upon had not been filled up to the plaintiffs, but was left blank. The court *affirmed* one of the judgments; but that, wherein the endorsement of the note did not appear to be filled up, they, for that reason *reversed* the judgment, and awarded a *procedendo.* It was, however, suggested at an adjourned meeting of the court of the present term, by the counsel for the appellees, that the endorsement to the appellees of the promissory note alluded to, had been filled up before the trial, and that the clerk had omitted to state that fact in the transcript of the record sent to this court. A certificate to that effect having been produced, the court, on motion of the appellees' counsel, struck out the judgment of reversal and award of *procedendo,* and ordered a writ of diminution. The counsel for the appellant, then consented that the record in this court might be amended by filling up the blank endorsement of the note; which being done, the judgment was also *affirmed.*