Rollins, S.
The will of this testator directed his executor to reduce his entire estate to money, and to dispose of the proceeds as follows :
*752 “First. My wife to receive $100 in cash * * *
Third. My mother to receive the .sum of $1,650, being the amount of borrowed money due her ; also interest on the same as may appear by my note held by her for above amount.
Fourth. All the balance of my estate, after paying the items hereinbefore named, shall be paid to my wife and child, the same to be equally divided between them.”
At the date of this will (March 7th, 1876), the testator was in fact indebted to his mother in the sum of $1,650 for borrowed money, and that indebtedness was evidenced by his two promissory notes, one for $1,150, dated September 1st, 1874, and the other for $500, dated January 1st, 1876. He died in August, 1876. His mother died in March of the year following ; the notes in question thereupon came to the hands of her executor, one Keese. At various times prior to April, 1880, Keese received from this decedent’s executor (Armstrong) sums of money amounting in all to $200, in part satisfaction of the claims of the estate of the testator’s mother against the estate of the testator himself.
Subsequently, Keese and Armstrong had with each other ■certain personal business transactions upon the settlement of which on May 31st, 1883, it was ascertained that the former was indebted to the latter in the sum of $13.44. Instead of discharging this indebtedness by the actual payment of money, Keese, with Armstrong’s approval, credited this estate with payment of a like sum in part satisfaction of the aforesaid claim of the testator’s mother.
On October 14th, 1886, Armstrong filed in this court an account of his administration. Certain objections were interposed, and the issues thus raised were submitted to a referee whose report is before me for confirmation.
, The referee finds that the provision in the third clause of the will {supra) is in the nature of a legacy, and that, even if this were not the case, the claim of Sarah Thompson’s estate as a creditor of this decedent would not be barred by the Statute of Limitations.
The latter finding involves the notion that the transaction between Armstrong and Keese above referred to must be treated as, in substance a payment of $13.44 by the former as decedent’s executor to the latter as executor of the dece- ■ dent’s mother. I think that the. referee has reached a correct conclusion.
It is not essential to the validity of his bequests that a testator should use the word “give” or the word “bequeath, ” or any other word of similar significance.
The very terms employed by this testator in the article of his will now under consideration, were held in Hiars v. Bedgood, 9 Leigh, 361, to constitute a legacy.
*753 Parker, J.,
pronouncing the opinion of our court of ap-' peals in Orton v. Orton, 3 Keyes, 486, approves the definition of a legacy which is to be found in Bacon’s Abridgement, viz., a “ gift or bequest by testament,” and declares that, “the word gift is not limited in its meaning to a gratuity, but has the more extended signification of a thing given, either as a gratuity or as a recompense.”
I think that the provision here in dispute is a legacy in satisfaction of a debt and that in view of section 1819 of the Code of Civil Procedure, the Statute of Limitations has not as yet begun to run against the representative of the deceased legatee. Nor is the enforcement of the claim of Sarah Thompson’s estate barred by the Statute of Limitations, even though the claim be regarded, not as a legacy, but as a debt.
In May, 1883, it would not have been entirely proper for Amstrong to have satisfied it in whole or in part, whether he had or had not been at that time in possession of funds belonging to the estates, and if he had made payments out of his own pocket he would thereby have entitled himself to reimbursement out of the estate moneys thereafter coming to his hands.
If Keese had actually paid Armstrong the sum of $13.44 and Armstrong had handed back to Keese the identical money on account of the Sarah Thompson claim, it cannot be doubted that the transactions would have taken the claim out of the operation of the Statute of Limitations. And this was in effect what actually took place.
Section 395 of the Code of Civil Procedure which makes an .acknowledgement or promise contained in a writing signed by the party to be charged thereby the only competent evidence of a new or continuing contract whereby to defect the Statute of Limitations expressly declares that, “ This section does not alter the effect of a payment of principal or interest.”
“Payment of a debt,” says the court of appeals of Virginia in Huffmans v. Walker (26 Grat., 314), “is not necessarily a payment of money, but that is payment which the parties contract shall be accepted as payment.”
It was held in Maber v. Maber (L. R., 2 Exch. Cas., 153), that in determining whether a transaction claimed to be a payment has had the effect of taking the case out of the Statute of Limitations, the true test is this: Would the transaction have supported a plea of payment if the creditor had brought an action?
Tried by this test the present case seems to me a plain one. In its essential features it closely resembles the one last cited. See, also, Hooper v. Stephens, 4 Ad. & El., 71; *754 Rodger v. Arch, 10 H. & G., 333; Amos v. Smith, 1 id., 233.
I do not think it necessary to discuss any of the other exceptions to the report of the referee. The report is in all things confirmed. _