## YEATON v. THE BANK OF ALEXANDRIA.

ERROR to the circuit court of the district of Columbia, in an action of *assumpsit* brought by the defendants in error against the plaintiff in error as endorsor of a promissory note for the accommodation of R. Young, the maker.

The declaration contained two counts. One upon the endorsement of the note, in the usual form, and without any averment of the insolvency of the maker, or of any steps taken to enforce payment from him. The other was for money had and received.

The same questions arose in this case as in the preceding case of *Young* v. *The Bank of Alexandria,* but the only question argued in this cause, was, whether an endorsor of a promissory note to the bank

*The bank of Alexandria may maintain an action against the endorsor of a promissory note made negotiable in that bank, without first suing the maker, or proving him insolvent, although the endorsement was for the accommodation of the maker, and notwithstanding that in Virginia the implied contract*

YEATON
v.
THE BANK,
&c.

of Alexandria, for the accommodation of the maker,
was liable in an action by the bank, until after a suit,
judgment and execution against the maker had pro-
ved fruitless, or the maker was otherwise proved to
be insolvent.

*of the endorsor of a promissory note, by the general understanding of the country, is, that he will pay the debt, if by due diligence it cannot be obtained from the maker.*

Upon the opening of the point, MARSHALL, Ch. J.
observed that it had been decided by this court in
the cases of *French* v. *The Bank of Columbia*, (*ante*,
*vol.* 4. *p.* 141.) and *Violet* v. *Patton*, at this term,
that the circumstance of its being for the accommo-
dation of the maker makes no difference. The en-
dorsor is as much liable as if he had himself received
the money.

*Perhaps the undertaking of the endorsor of a note to a bank may be different.*

*Youngs*, for the plaintiff in error.

*It is no objection that the endorsement was for the accommodation of the maker. The consideration moving from the bank to the maker of the note, on the credit of the endorsor, charges both the maker and endorsor.*

The general law of Virginia, upon the subject of
promissory notes, is, that the endorsor is not liable
until a suit has been brought against the maker, and
judgment recovered; and the execution has proved
fruitless, or the maker is otherwise proved to be in-
solvent. If there be any exception in favour of the
bank it must be a privilege granted by its charter.
The only words under which such a privilege can be
supposed to exist are these: "And whereas it is abso-
lutely necessary that debts due to the said bank
should be punctually paid, to enable the directors
to calculate with certainty and precision on meeting
the demands that may be made upon them, be it en-
acted, that when any person or persons *indebted* to
the said bank on bonds, bills or notes, given or *en-
dorsed* by them, with an express consent in writing
that they may be negotiable at the said bank, shall
refuse or neglect to make payment *at the time the
same may become due*, and a suit shall be *thereupon*
commenced against such *defaulter*, and a *capias ad
respondendum* returned executed, or a copy left at the
usual place of residence of such defaulter, at least ten
days before the return day of such writ, the court
shall" order the proceedings to be made up, and the
cause tried at the first court.

But according to this act, the person to be sued must be a person *indebted* to the bank *by endorsement;* and under the general law of Virginia no person is *indebted by endorsement* of a note until the maker be insolvent, or the plaintiff shall have failed to obtain payment from the maker by suit, judgment, and execution.

*Swann*, contra, admitted the general law of Virginia respecting promissory notes to be as stated, but contended that by the words of the act of incorporation, an endorsor of a note is to be considered as indebted to the bank upon failure to pay the note when it becomes due. The preamble shows that punctuality in payment was the object in view; which would be entirely defeated if the bank could not compel payment from an endorsor until they had pursued the maker through all the tedious delays of the law. If the note be not paid when it becomes due, the act calls the endorsor a *defaulter;* and directs judgment to be entered up against him at the first court thereafter.

*March* 10.

MARSHALL, Ch. J. delivered the opinion of the court as follows, viz.

The question in this case is, whether the endorsor of a note negotiable in the bank of Alexandria, if such endorsement be for accommodation, may be sued by the bank, before a suit shall be instituted against the maker, if the maker be solvent.

In Virginia, the endorsor of a promissory note was not, when the town of Alexandria was separated from that state, liable to the holder by any express statute. He was only liable under the implied contract created by his endorsement. This implied contract, by the general understanding of the country, was, that he would pay the debt, if by due diligence it could not be obtained from the maker. This condition, however, was not express-

YEATON
v.
THE BANK,
&c.
ed. Yet it was just, because, it was consistent with general usage, and, therefore, was the real under-standing with which such an endorsement was made and received.

But in banks, this is probably not the usage; and if it be not, then the same reason does not exist for annexing such a condition to the contract created by endorsement. If banks are understood to receive notes made negotiable with them, as subject to the law which governs inland bills of exchange, then it. would seem reasonable, in the case of notes actually negotiated with them, to imply, from the act of en-dorsement, an undertaking conformable to that usage. If, then, the case showed that such was the usage of the bank, and such the understanding under which notes were discounted, this court is not pre-pared to say that the undertaking created by the endorsement would not be so fashioned as to give effect to the real intention of the parties.

But the incorporating act removes any doubt. which might otherwise exist on this point.

The 20th section of that act declares, " that when-ever any person or persons indebted to the said bank on bonds, bills, or notes, given or *endorsed* by them, with an express consent, in writing, that they may be negotiable at the said bank, and shall refuse or neglect to make payment at the time the *same* may become due, and a suit shall *thereupon* be com-menced, &c. judgment is to be rendered in a sum-mary manner.

A person, then, may become indebted to the bank on a note endorsed by him, as well as on a note made by him; and the question is, when does he become indebted. The act appears to answer this question in the succeeding member of the sentence. The words are, " and shall refuse or neglect to make payment *at the time* the *same* may become due." To what antecedent does the word *"same"* refer? Most obviously to the words " bond, bill or note." When the bond, bill or note becomes

due, the maker or endorsor, who shall refuse or neglect to make payment, is within the description of the act. No man can be said to refuse or neglect to make payment, before the money is demandable from him, and till then no action can be brought. But the law proceeds to say, " and a suit shall *thereupon* be commenced." The word " *thereupon*" must refer to the note, or to the circumstances previously stated. Give it the one meaning or the other, and the law obviously contemplates a suit against the maker or endorsor, on his refusing or neglecting to pay such note, when it shall become due. The act then proceeds to say, that, when this suit shall be so commenced, the court shall render judgment thereon in a summary way.

It is alleged that the preceding part of the section is all recital, and cannot, therefore, be construed to give a right to sue, where that right did not before exist: that the enacting clause gives no remedy where one did not before exist; but substitutes a summary mode of proceeding, for that more tedious action which the previous laws had given.

It is true that the first part of this section is recital; but it describes the precise case in which judgment shall be rendered in a summary way. That precise case is, where a person indebted, by making or endorsing a note negotiable and negotiated in the bank, shall refuse or neglect to make payment thereof, when such note shall become due. The time when he becomes indebted is declared to be, when the note becomes due.

It is alleged that an accommodation endorsor cannot then become indebted. This distinction was completely overruled in the case of Violet and Patton. The consideration moving from the bank to the maker of the note, on the credit of the endorsor, charges both the maker and the endorsor. The endorsor is, in this respect, as liable, both in reason and in law, to the claim of the bank, as if he had placed his name on the face instead of the back of the note.

Judgment affirmed with costs.

YEATON
v.
THE BANK,
&c.

JOHNSON, J. Both the questions,* argued in this. case, arise out of the act of Virginia incorporating the bank of Alexandria.

On the point of the summary jurisdiction, I concur with my brethren, and think this opinion perfectly consistent with the decision, at the last term, relative to the right of appeal. I remember that my opinion in that case was founded on the idea that the provisions of that act, relative to the summary recovery of debts, was entirely a judicial regulation. That the judicial power was unalienable from the sovereignty of a country, and must, therefore, in all its modifications, remain subject to the will of succeeding legislatures. That it was, in fact, a subject in which a peculiar, indefeasible right could not be vested in an individual. I thought it, therefore, from its nature, unaffected by the clause of the act of acceptance reserving to the bank its corporate rights, and of course affected by the law which gives an appeal, generally, from the courts of this district to the supreme court, above a certain amount. I have no doubt of the power of congress to deprive them also of their summary remedy; but it has not yet legislated to that effect.

On the other question, I entertain a very strong opinion in opposition to that of the court.

The doctrine has been repeatedly sanctioned in this court, that, in the state of Virginia, the holder of a promissory note cannot recover against an endorsor without proving the insolvency of the drawer. But it is contended that the act, incorporating this bank, has placed the notes negotiable therein on a different footing; and that an endorsor of such a note may be sued as soon as it is dishonoured, without any evidence of the insolvency of the drawer. The following are the words of the clause, so far as they are material to this case: " And whereas it is

---

* This case was argued in connection with that of *Young* v. *The Bank of Alexandria*, as one case. This opinion, therefore, applies to both cases.

6

absolutely necessary that debts due to the said bank should be punctually paid, to enable the directors to calculate with certainty and precision on meeting the demands that may be made upon them, be it enacted, that whenever any person or persons indebted to the said bank on bonds, bills, or notes, given or endorsed by them, with an express consent in writing that they may be negotiable at the said bank, and shall refuse or neglect to make payment at the time the same may become due, and a suit shall be thereupon commenced against such defaulter, and a *capias ad respondendum* returned and executed, or a copy left at the usual place of residence of such defaulter, at least ten days before the return day of such writ, the court shall," &c. It then goes on and enacts, that, in such case, " the court shall order the proceedings to be made up, and the cause tried at the first court." This bare recital, or preamble, without one enacting word, is what is supposed to have effected this important change in the law of Virginia, relative to the liability of an endorsor. Much stress was laid, in the argument, upon the use of the word " indebted," as applied to the endorsor, the words " negotiable at the said bank," and words which suppose the commencement of a suit, as soon as a note " becomes due." I positively deny the correctness of maintaining any repeal or alteration in the principle of a law, upon an implication drawn from a mere preamble or recital to an act. Enacting words will undoubtedly often produce a repeal by implication, but a recital or preamble sets forth merely the motives or inducements of the legislator, and, whether founded in error or truth, serves no other purpose than to justify him to those for whom he is legislating, or, at times, to assist in developing the meaning of doubtful enacting words. Admit the principle, that a preamble may have the effect of enacting words, and there is no necessity for dilating on the inextricable absurdities in which a court may be involved. In the case before us, it is possible that the legislature may have supposed that the law of Virginia would sanction an immediate suit against the endorsor without evidence of the drawer's insolvency;

but their courts of justice have decided otherwise; and it would be singular if an erroneous opinion, entertained by that body, should have all the effects of a law passed by it. But there is not a word contained in this preamble which may not be fully satisfied, without producing any necessary implication against the general law of Virginia, relative to the liability of the endorsor.

When the legislature speaks of a person indebted by endorsement, it can only be understood to speak of one indebted according to the legal liability of an endorsor; which is only, by the laws of Virginia, in case of the insolvency of the drawer.

When it speaks of a consent in writing, that it may be negotiable at the said bank, it can only mean what it expresses; and intends it for the purpose of subjecting the individual to the summary recovery given in such a case; for, as to his general liability as endorsor, such a consent was in nowise necessary; that liability existed in its full extent without it.

And as to the supposition of the endorsor's liability to be sued when the note becomes due, this also is strictly and literally true, if the drawer should then be insolvent, or (I suppose) if he should become so at any time before the trial of the issue

Upon the whole, therefore, it appears to me that there is no possible difference between the liablity of an endorsor generally, and an endorsor of a note negotiable in the bank of Alexandria; that the legislature intended to make no distinction; and, if it had expressly declared such to be its intent, no such change would have been produced, without following up that intention with sufficient enacting words; but that in fact, its sole object was to do that which it professes to intend, and alone has effected, viz. to give a summary remedy against all persons becoming indebted to that bank, whenever their legal liability is incurred. In fact it may, with the utmost correct-

ness, be affirmed of an endorsor that he is *indebted*, and that he may be sued when the note *becomes due*, without at all interfering with the laws of Virginia on this subject: for a thing may be *debitum in presenti*, and yet no cause of action exist against him; he may lie under a present obligation to pay a sum of money, upon some contingency or future event. And, with regard to his liability to be sued when the note becomes due, it may be very correctly affirmed that it is not due from him until the insolvency of the drawer can be shown. As to the drawer, the note is due when it is made payable; but the principles of the Virginia law add a contingency to the liability of the endorsor, so that, in fact, his undertaking is collateral and contingent, and the amount is not legally due from him until after the day of payment, and provided the drawer should prove insolvent.