MAGRUDER (HOBBS v.). See Case No. 6,551.

MAGRUDER (McCORMICK v.). See Case No. 8,723.

———————

## Case No. 8,965.

MAGRUDER v. McDONALD.

[3 Cranch, C. C. 299.] [1]

Circuit Court, District of Columbia. May Term, 1828. [2]

NOTES—INDORSERS—ACCOMMODATION—ACTION INTER SE.

If two persons, without any communication or agreement between them, severally indorse a note for the accommodation of the maker, and the first indorser is obliged to take up the note, he may recover one half from his indorsee. [2]

Indebitatus assumpsit, for money paid, laid out, and expended by the plaintiff, for the use of the defendant, at his request, and upon an insimul computasset. At the trial a verdict was rendered for the plaintiff by consent, subject to the opinion of the court upon the following case agreed:

In this case it is agreed that the plaintiff produced in evidence a promissory note, in these words and figures, to wit: "$950. George Town, November 25th, 1823. Sixty days after date, I promise to pay George B. Magruder, or order, nine hundred and fifty dollars, at the office of discount and deposit, Washington, for value received. Sam'l. Turner, Jr." Which note was written and signed by the said Samuel Turner, and indorsed by the plaintiff, the said George B. Magruder, and by the defendant, the said John G. McDonald. That the said note was so drawn and indorsed, with the understanding of all the said parties thereto, that it should be discounted in the said office of discount and deposit, for the sole use and accommodation of the maker, the said Samuel Turner, no value being received by either of the said indorsers. That it was so discounted, and the proceeds thereof applied to the credit of the said Turner in the said office. That long before the making of the said note, viz., in the year 1819, the said Turner had two notes discounted for his use and accommodation in the said office, namely, one for $270 indorsed by the said George B. Magruder and by the said John G. McDonald; and one for $710 indorsed by the said George B. Magruder and one Samuel Hambleton; which last-mentioned note was continued by renewal with the indorsement of the said Magruder and Hambleton until September, 1820, when, in consequence of the said Hambleton's absence, it was protested; after which the said office permitted the accommodation to be renewed, upon condition that the said Turner should get another good indorser in the place of the said Hambleton; whereupon the said John G. McDonald, at the solicitation of the said Turner, indorsed a note for the said sum of $710, which was brought to him already indorsed by the said George B. Magruder. That in March, 1821, a small part of the money having been paid, the two notes were consolidated and renewed by one note for $950, drawn by the said Turner, and indorsed by the said Magruder, and by the said McDonald, which was, from time to time, renewed by notes similarly drawn and indorsed, the last of which is the aforesaid note so produced in evidence by the plaintiff. That neither at the time of indorsing the said notes respectively, nor at any other time, was there any communication between the said Magruder and the said McDonald upon the subject of such indorsement. Both of them, however, knew, at the time of indorsement, that the said notes were intended to be discounted for the accommodation of the said Turner; and in every instance the said Magruder was the first indorser. That the said note so as aforesaid produced in evidence by the plaintiff, not having been paid when due, was duly protested, and the payment thereof having been duly demanded, and due notice of such demand and of non-payment having been given to the said indorsers, judgments at law were obtained against both, by the Bank of the United States; and the whole amount having been paid by the said Magruder, he brought this suit to recover, from

———————

[1] [Reported by Hon. William Cranch, Chief Judge.]

[2] [Reversed in 3 Pet. (28 U. S.) 470.]

the said McDonald, one half of the amount so paid by the said Magruder.

By consent of the parties in this suit, a verdict is rendered for the plaintiff for one half of the amount so paid by the said Magruder, as aforesaid, in satisfaction of the judgment against him, subject to the opinion of the court upon this case agreed; and if, upon this case agreed, the court should be of opinion that the plaintiff is entitled to recover, then judgment shall be entered according to the said verdict; but if the court should be of opinion that, upon the said case agreed, the plaintiff is not entitled to recover, then the said verdict shall be set aside, and judgment of nonsuit shall be entered for the defendant.

Mr. Wallach, for defendant, cited Robertson v. Williams, 5 Munf. 381; Hixon v. Reed, 2 Litt. (Ky.) 174; Brown v. Mott, 7 Johns. 361; Morgan v. Reintzel, 7 Cranch [11 U. S.] 273.

Mr. Key and Mr. Dunlop, for plaintiff, cited Wood v. Repold, 3 Har. & J. 125.

MORSELL, Circuit Judge (CRANCH, Chief Judge, dissenting). This action was brought to recover of McDonald one half of a sum of money, which the plaintiff has been compelled to pay to the Bank of the United States, as indorser for Samuel Turner. This was the case. In the year 1819 the bank discounted two promissory notes, for the sole accommodation of Turner: one indorsed by George B. Magruder and John G. McDonald, for $270; the other indorsed by George B. Magruder and Samuel Hambleton, for $710. On the 20th of September, 1820, the last-mentioned note was renewed, and McDonald received as indorser, in lieu of Samuel Hambleton. In March, 1821, the two notes were consolidated; some small sum of curtail having been paid. Magruder was the first indorser in each instance. This note of $950 is a renewal and continuance of other notes, similarly drawn and discounted for the said Turner's sole accommodation. At length, Turner failing to pay, it was duly protested; and the bank recovered several judgments against Magruder and McDonald, as indorsers. Turner obtained the indorsement of Magruder, with the understanding that another accommodation indorser was to come on the note. The note, with Magruder's indorsement, was taken to McDonald, by Turner, who presented it to him for his indorsement merely, and McDonald, as soon as he had indorsed it, returned it to Turner, who offered it to the bank, and for whom it was discounted. McDonald, at the time he received and indorsed it, knew that it was for the sole accommodation of Turner, and for that purpose was indorsed by Magruder. McDonald indorsed it at the instance and request of Turner, and for his like sole accommodation, and without having paid any consideration for the note.

The substance of the argument against the recovery, as I have understood it, is, that this cannot be considered as a case of co-securities (sureties); that the indorsements are separate, made at different times, and not joint, and without any understanding between them that they were so; and, from the nature of the instrument, the indorsement is evidence of a sufficient consideration, and amounts to an agreement, on the part of the first indorser with the second, that, in the event of non-payment by the drawer, the first indorser was to pay the full amount. Several adjudged cases were cited and relied on, to support the defendant's objections. The one which seems to me most like the case before the court, was that of Wood v. Repold, in the court of appeals in Maryland; though in that case there was the absence of a fact which exists in this, and which might have been thought material. In that case Wood did not look to the case of any subsequent accommodation indorser coming on the note. In this case it was otherwise with Magruder. But, supposing the cases alike, let us examine its principles, to show in what cases persons are to be considered as securities, (sureties,) where they will be equally bound to each other to pay one half of the debt of their principal, and the principle of law by which they are so bound. The very familiar case of a joint bond is put. It is, however, conceded, that the bond need not be executed by the sureties at the same time; and there is no necessity that there should be any previous express agreement or understanding between them; and that it is not even necessary that the first-signing surety should know who, or that any one is to come after him, as surety in the bond; yet, by operation of law, they are co-securities, and either, who pays the whole, may call upon the other for his contribution.

Now what is here meant by the operation of law, creating or imposing upon them a joint liability? or, by operation of law they would be bound to contribute? Is it meant that there is any express or implied contract contained in the bond, between the securities? We are all too familiar with the terms of a joint bond to entertain a moment's doubt that there is not, from beginning to ending of it, one single stipulation between the securities, either express, or from which the law can imply any such obligation. Therefore, if any such obligation is created between them by operation of law, it is upon other principles; which principles we shall endeavor to show are not peculiar to the form of a joint bond. It is said, with a view to show a difference in principle between indorsers and co-securities in a bond, "that consideration is always presumed in the case of indorsers, inter se, and never in that of securities in a bond." We shall endeavor to show that, without an actual real consideration, there is no difference in the cases. Other reasons are assigned, for the purpose of showing that the indorsers, in

that case, were not to be considered as co-sureties, and not bound by the operation of the same principle of law as in the case of a bond. It is objected that their indorsement is several, and not joint; at different times, and without any understanding between them to that effect. But I understand it to be conceded that, in the case of a bond, they would be equally bound if it were a joint and several bond, and although it were signed at different times, and without any knowledge, by the first signer, who or whether any other was to sign it as such.

The other part of the opinion is taken up in showing that want of consideration could not be available as a defence in that action. It proceeds: "The bill in question, though drawn and indorsed for the accommodation of the drawer, to enable him to raise money upon it, must be considered as if it had been made in the ordinary course of business, subject to all the law and incidents attending bills of exchange, indorsed and passed in the regular course of negotiation. The same principles of law, and the same rules of evidence, equally apply to both; and, when so considered, the objection that Wood received no money consideration at the time of his indorsement, appears to me to have no weight." "The want of consideration" "extends to all bills of exchange, whether for accommodation or otherwise. But that principle, when tested by the established practice and settled forms of proceedings in actions on bills of exchange, will, I think, be found applicable only to the particular stage of the negotiation in which the bill has stopped in the hands of the party suing, who, having never passed it away, has, consequently, been obliged to pay nothing upon it, nor has created any liability on himself to pay; and, therefore, can only recover in virtue of a consideration passed by him to the party from whom he received it; and, in such case, it is that consideration alone which gives him a right of action. And although the law supposes a consideration, and the plaintiff is under no necessity to prove one, yet, if none did pass, it was a naked undertaking, of which the defendant may discharge himself at the trial, by showing a want of consideration, or that it was an illegal one. But the same principle does not apply to this, or any case of an indorser or intermediate indorsee, who, under his liability on his indorsement, has been obliged to pay or take up the bill. If it did," (exist in such a case, or could apply in such a case,) "there never could be a recovery on a bill of exchange, by an indorser, or intermediate indorsee, against the drawer or immediate indorser; for every indorser, by his indorsement, discharges the preceding parties, as to himself, and constitutes his indorsee the payee. No consideration, therefore, which he may have originally paid for the bill can afford him a ground of action; for, having parted with all his interest in it, he is presumed in law to have received a valuable consideration for it, and can have no right to the money a

second time. He cannot, then, recover, in consideration of what he may have originally given for the bill; nor could he have an action on the bill, in consideration of payment by him in virtue of his indorsement; as such payment is not a consideration originally given for the bill, but must be subsequent, which is contrary to every day's experience; for no action is more common than that by an indorser against the drawer, or an intermediate indorsee against his indorser, in which the plaintiff can only recover on the proof of payment by him to the bona fide holder of the bill, which payment gives him a new title to receive the money from the antecedent party, and is the very foundation of the suit; and the consideration-money between them, as immediate parties to the bill, is never made a subject of inquiry, and, if proved, could not aid the plaintiff."

The judge then draws his conclusion: "And this shows that the principle, that, as between immediate parties to a bill of exchange, the want of consideration is a sufficient defence, is only applicable where a payee or indorsee has never parted with the bill;" "and that it does not apply to any party to a bill, who, on its being protested, has been obliged to take it up; in which case it is not the consideration originally moving from him which entitles him to recover, but it is the subsequent payment alone on which the law raises the promise, and gives him a new cause of action; and he sues in the capacity in which he paid, and not in that in which he received it."

In answer to the principles and reasoning in that part of the case just stated, I hold the law to be, that where a person merely indorses a bill for the purpose of assisting another in raising money, he is only a surety for that other, and he has no demand till the payment of the money. See Evans, Bills, p. 149. And if there were many, instead of one, they would be all equally sureties.

On the subject of the right to go into the consideration of the equitable circumstances attending the transaction, I understand the law to be, that it is not owing to the form of a bill of exchange, or note, nor the circumstance of its being in writing, that the law gives it the effect of carrying with it the same presumption of a consideration as a bond, or other specialty, when in the hands of a third person: but it is in order to facilitate and strengthen that commercial intercourse, which is carried on through the medium of this species of security. Therefore, in an action brought against the party, by the person with whom he was immediately concerned in the negotiation of the instrument, or by the person who has given no value for it, in such regular commercial intercourse, he will be at liberty to prove, either that the consideration was an unlawful one, or none at all, or what it was, with all the circumstances. Where a bill is not taken in the usual course of trade, it is subject to all the equities that subsisted between

the original parties. Evans v. Smith, 4 Bin. 366.

A bill or note, therefore, does not become clothed or protected by the presumptions or incidents of real commercial negotiable paper, (the consideration whereof shall not be impeached,) until it gets into the hands of a bonâ fide holder before the bill or note falls due, and without notice. It is true that there are cases in which the equitable circumstances may be gone into, and where the want of consideration would not be an available defence, and this is sometimes the case of indorsements for the accommodation of the drawer; but it is in those cases only where the indorsee, or holder, has paid a valuable consideration for it at the time he receives it. If it has been paid to the drawer, for whose accommodation the note was drawn and indorsed, it is considered, in law, as being also for the benefit of the indorser, or indorsers; and so the following cases will show it has been adjudged. "If the indorsee knew that the bill was an accommodation bill, he can recover no more against the indorser than the value he has paid; but if the bill was made on a good consideration, he may recover the whole; and if he has not paid full value for it, he is a trustee for the indorser in respect of the surplus." Starkie, pt. 4, p. 282, o. "Whenever the holder has given full value for the bill before it is due, the defendant will not be at liberty to show that he had received none, although the plaintiff knew that circumstance at the time he became the holder, unless he also knew that the party from whom he received it was acting fraudulently." Chit. Bills, 84, 86.

A plaintiff cannot, in general, maintain his action against the person from whom he received the bill, unless he gave him a valuable consideration for it. 7 Term R. 350, 378, 571. But it is said, "these principles will be found applicable only to the particular stage of the negotiation at which the bill has stopped in the hands of the party suing, who, having never passed it away, has consequently been obliged to pay nothing upon it," &c. It really has been my most sincere desire rightly to understand, and duly appreciate this part of the opinion; but I doubt yet whether I have succeeded. That we may not be carried away by the mere sound of words, let the reasons assigned be taken. "Because, having never passed it away, he has, consequently, been obliged to pay nothing upon it, nor has created any liability upon himself to pay." Is this position correct? The case put is of immediate parties; such as the drawer and acceptor, the indorser and indorsee. Let us take the very case put, of an intermediate indorsee (or indorser). Such an indorser has paid to his immediate indorser, one half of the amount of the bill only, or has paid no value at all for it, or the consideration between them has been an unlawful one, or such, his next antecedent, indorser has passed (it) to him for his own

accommodation, and he indorses to another for a full consideration received of such other, and that other indorses it for like consideration. When the bill falls due, it being unpaid by any of the other parties, this intermediate indorsee is obliged to take it up, or pay the amount to the last indorsee; can he recover any thing more from his next immediate indorser than he paid him for it, —suppose one half? Or, suppose he has received it from such immediate indorser without paying him any thing for it, but for his own accommodation; the books abound with authorities which support the position that he could not. The very case just cited by me, Starkie, pt. 4, p. 282, proves this; see, also, Chit. Bills, 91.

The next reason, "for every indorser by his indorsement, discharges the preceding parties as to himself, and constitutes his indorsee the payee. No consideration," &c. Suppose it to be the case. How could that be a reason to prevent the party sued from showing want of consideration, &c. But is it the case? By his indorsement or assignment, it is true, whilst the bill remains in the hands of the assignee or indorsee, his rights and remedies upon the bill are suspended, but the moment he is obliged to pay the holder and receives back the bill, do not all the rights revive, and he become just as much entitled to recover upon the bill against the antecedent parties, as he ever was; and upon what consideration? Upon the new consideration, as it is stated, which is given him by thus having been obliged to pay it and take it up? Not at all so; it is upon the old consideration and none other; and to this effect is the case of Dugan v. U. S., 3 Wheat. [16 U. S.] 182, 183. The words of the judge are: "After an examination of the cases on this subject, which cannot be all of them reconciled, the court is of opinion that if any person who indorses a bill of exchange to another for value, or for the purpose of collection, shall come to the possession thereof again, he shall be regarded (unless the contrary appear in evidence) as the bonâ fide holder and proprietor; and shall be entitled to recover notwithstanding there may have been one or more indorsements in full, subsequent to the one to him, without producing any receipt, or indorsement back from either of such indorsers, whose names he may strike from the bill, or not, as he may think proper." This case then, surely answers all the reasons with respect to the want of consideration, &c. being applicable only to the cases where the bill or note was stopped in the hands of the last indorsee. The Kentucky case of Hixon v. Reed rests upon the authority of the New York case of Brown v. Mott. That case differs essentially from the one before the court. The second indorser did not indorse it solely for the accommodation of the drawer. He was as real a party as the last indorsee. He was to have, for his own use, one half of the amount of the

bill, $250. In that case the court say, "If there had been any fraud in this case, or the plaintiff had not made any advance upon the note, the taking it under the knowledge stated in the case," (that is, of the first indorser's indorsing it for the accommodation of the drawer,) would have let in a defence."

From the best consideration I have been able to give to the case before the court, I think it is not so much a matter of consequence what the particular form of the instrument is, as what is the nature of the undertaking and engagement of the parties relatively considered to Turner the drawer. Is it a fair, proper case of contribution between the parties? To make it a case of that kind, and to be decided upon such principles, it is wholly immaterial what is the form of the instrument, which signs first, whether joint or several, with an understanding between the parties or not, whether signed at one time, or at different times, or whether it be by one instrument or several. The principle by which they are obliged is not founded in the written contract, either express or implied inter se, at all. The only material matter required is, has the undertaking, entered into by them, been in the same character? Are both of them bound as sureties for the same person, in the same sum? Are they in æquali jure, common in interest, common in burden? To this effect see Poth. Obl. pp. 6S, 69, and 2 Bos. & P. 26S, 270–272, in which last case it is thus stated by the court. ."The point remains to be proved that contribution is founded on contract. If a view is taken of the cases, it will appear that the bottom of contribution is a fixed principle of justice, and is not founded in contract." Again, in another part of the same case, the court say, "In the particular case of sureties, it is admitted that one surety may compel another to contribute to the debt for which they are jointly bound. On what principle? Can it be because they are jointly bound? What if they are jointly and severally bound? What if severally bound by the same or different instruments. In every one of those cases, sureties have a common interest, and a common burden. They are bound as effectually quoad contribution as if bound in one instrument," &c.

Upon the whole, therefore, I think the verdict for the plaintiff is right, and ought to stand.

THRUSTON, Circuit Judge, concurred.

CRANCH, Chief Judge, dissented, and delivered the following opinion:

The counsel for the defendant cited the following cases:

1. Robertson v. Williams, 5 Munf. 3S1, which was a joint action of debt in Virginia, against the maker, Williams, and the first indorser, Smith, of Williams's promissory note which had also been indorsed by Lockhead and the plaintiffs, and discounted by a broker, and the proceeds received by Lockhead. The plaintiffs took it up, after protest, and recovered judgment against Williams and Smith who never received any consideration for the note, the same having been fraudulently negotiated by Lockhead, but the plaintiffs were ignorant of the fraud. The court of appeals gave no reason for their judgment. But Leigh and Wickham, in arguing, said, 1st. "The risk which the plaintiffs ran by indorsing, was a sufficient consideration to vest the property in them by relation back to the time of the indorsements, if they were afterwards made liable for the contents, and, 2d. The plaintiffs did actually pay the full contents of the note as a consideration for it when they retired it from the bank; and this consideration has relation to the time of their indorsement." "Suppose the first indorser, Smith, had been the sufferer, could he not have recovered of Williams? yet he gave no consideration for it at the time. Suppose an ordinary accommodation note protested for non-payment, as to the maker, taken up by the indorser; cannot such indorser recover of the maker? yet in no case of that kind, does such indorser pay a consideration for the note at the time of indorsement." These may be presumed to be the reasons for the judgment.

2. The next case cited is Hixon v. Reed, 2 Litt. [Ky.] 174, in the court of appeals of Kentucky. Ward made his note to Reed, who indorsed it to Hixon, who indorsed it to the bank, who discounted it for the accommodation of Ward, the maker, who became insolvent. The note was duly protested so as to charge both indorsers, neither of whom received any consideration for his indorsement. The note was taken up by Reed, the payee and first indorser, who brought his action against Hixon, the second indorser, for one moiety of the money paid to the bank, and recovered in the court below. But that judgment was reversed in the court of appeals. The court cited the case of Brown v. Mott, 7 Johns. 361, with approbation, and said that if the plaintiff in error, the second indorser, had discharged the whole of the note to the bank, he could have recovered the full amount against the defendant, and consequently the defendant in error having first paid it, cannot be entitled to recover any part from the plaintiff.

3. The next case cited, is Brown v. Mott, 7 Johns. 361. Dean made his promissory note payable to the order of Mott, who indorsed it for the accommodation of the maker (Dean); but the person applied to, to discount the note, refused without another indorser. The plaintiff offered to indorse it for the maker, if he would pay him, out of the money to be obtained, $250 which he owned him; which he agreed to do. The plaintiff then indorsed the note and received the $250. The note never was in the possession of the defendant, and no consideration passed between him and the maker, or the plaintiff who knew that the de-

fendant had indorsed the note solely for the accommodation of the maker. The note was duly protested, so as to charge the defendant. Verdict for the plaintiff, subject to opinion of the court on a case stating the above facts. The court said: "The defence is that the defendant indorsed the note for the mere accommodation of the maker, and that this fact was known to the plaintiff when he subsequently indorsed the note. This, however, is not, of itself, a defence. The indorser cannot set up that he indorsed the note without consideration, because by sending the note into circulation, by a general indorsement, and making it thereby a negotiable bill, a consideration is implied by the law merchant, and an inquiry into that fact is precluded. If there had been any fraud in the case, or the plaintiff had not made any advance upon the note, the taking it, under the knowledge stated in the case, would let in a defence; or if he had purchased it or taken it up at a reduced price, it would seem that he could recover only the amount paid. Wiffen v. Roberts, 1 Esp. 261; Braman v. Hess, 13 Johns. 52. But as the drawer" (maker) "originally raised the money upon the note, with the indorsement of the present parties, the note must have been returned to the plaintiff by the subsequent holder, and he must have taken it up for the full value. He has, then, as good a right to resort to the defendant as a prior indorser, as if he had originally received it for its value. An indorser, for the accommodation of the maker, is entitled to all the privileges of an indorser, by being fixed in due season, (2 Caines, 243; [French v. Bank of Columbia] 4 Cranch [8 U. S.] 141; Smith v. Becket, 13 East, 187; Brown v. Maffey, 15 East, 216); and he must be equally chargeable, as indorser, to the persons standing after him on the note." Yeaton v. Bank of Alexandria, 5 Cranch [9 U. S.] 49; Violett v. Patton, Id. 142. "The cases of Smith v. Knox, 3 Esp. 46, and Charles v. Marsden, 1 Taunt. 224, show that the principles of the commercial law are settled, that where there is no fraud in the case, and the indorsee has given full value for the bill, he shall recover of the acceptor, notwithstanding the bill was accepted without consideration, and for the accommodation of the drawer, and that fact was known to the indorsee when he took the bill, and though he even took the bill after it was due. It is impossible to distinguish this case in principle from those last mentioned, and the plaintiff is entitled to judgment." When the court, in the above case of Brown v. Mott, said, "or the plaintiff had not made any advance on the note," they evidently alluded to the fact that the maker of the note was indebted to the plaintiff in the sum of $250, and gave the note in payment, to that extent; so that as to so much of the note there was a good and valuable consideration as between the maker and the plaintiff; so that the latter was a bona fide holder for a valuable consideration to that extent; and therefore the defendant who had indorsed the note generally, to give credit to the note, and had put it in circulation as a negotiable bill, could not defend himself against the want of a consideration. It is not necessary that the indorser should have received any thing; it is sufficient if the plaintiff has parted with any thing in consequence of the credit of the defendant's name upon the note. This I take to be the argument of the court upon that point. But the point in the opinion of the court in that case which relates to the present case of Magruder v. McDonald, is, that the plaintiff, having taken up the note, had as good a right to resort to the defendant as if he had originally received it for its value.

4. The next case cited is Wood v. Repold, 3 Har. & J. 125. Brown's bill of exchange on Gould indorsed by Wood and by Repold for Brown's accommodation, and discounted by a bank in Baltimore, was taken up by Repold, the last indorser, who, by the judgment of the court of appeals of Maryland, (Buchanan, Polk, and Gantt, JJ., against Chase, C. J., and Earle, J.,) recovered the whole from Wood, the second indorser, there having been no communication between the indorsers at or before the time of indorsing. Two grounds of defence were taken:—1st. That they were co-sureties; and, 2d. That there was no consideration between them. Buchanan, J., in delivering the opinion of the court, said: "There is no doubt that two or more may jointly indorse a bill of exchange, and in such case each would be bound to contribute his just proportion of the amount; but then the indorsement itself must be joint, and not several and distinct; or, at least, to create, between two successive indorsers, a liability to contribution, there must be a correspondent understanding between them." "Every man, who signs an instrument of writing, is considered as understanding the nature of the obligation or contract into which he enters; and, by his signature, subjects himself to the operation of the law governing such instruments." After stating that co-sureties in a bond, whether they sign at the same or at different times, are liable to contribution, says: "But not so with respect to the indorsers of a bill of exchange. Every indorser is considered, in law, as a several and collateral security, and is as a drawer to his indorsee. An indorsement presupposes a consideration passing from the indorsee to the indorser, and of necessity precludes the presumption of a joint undertaking. For the law is consistent, and both presumptions cannot stand together." "I cannot, therefore, entertain the first objection; but think that the indorsements of Wood and Repold must be considered as several and successive; to be operated upon by the law regulating such transactions." With regard to the second objection, the want of consideration between Wood and Repold, after observing that the want of consideration between immediate parties to a bill of exchange, whether for accommodation or not, is a good defence, says:—"But that principle, when tested by the established practice

and settled forms of proceedings in actions on bills of exchange, will, I think, be found applicable only to that particular stage of the negotiation at which the bill is stopped in the hands of the party suing, who having never passed it away, has, consequently, been obliged to pay nothing upon it, nor has created any liability on himself to pay, and therefore can only recover, in virtue of a consideration passed by him to the party from whom he received it; and in such case, it is that consideration alone which gives him a right of action. It does not apply to any party to a bill who, on its being protested, has been obliged to take it up; in which case it is not the consideration originally moving from him which entitles him to recover; but it is the subsequent payment alone on which the law raises the promise, and gives him a new cause of action; and he sues in the capacity in which he paid the bill, and not in that in which he received it."

These cases satisfy me that this court was wrong in refusing a new trial, at December term, 1825, in the case of McDonald v. Magruder [Case No. 8,761], where the jury gave damages to the plaintiff for only one half of the note; the circumstances in that case being substantially the same as those in this, excepting that in that case McDonald had paid the whole, and being the last indorser, brought his action as indorsee against Magruder, his immediate indorser; whereas the present suit is by the indorser against his indorsee. The form of the instrument is very material in determining the nature of the contract. The parties have adopted a form which, according to the law applicable to such instruments, makes the parties severally and successively, and not jointly liable, and which gives the holder a right to resort to all the preceding parties on the note. Prima facie the indorsee has a right to recover the whole amount of the note from a prior indorser, and the burden of proof is on the defendant to show a different contract, and to rebut the evidence arising from the form of the instrument. The facts in this case do not show a different contract, and do not rebut the presumption. The circumstance that both parties are accommodation indorsers is not evidence of a different contract. It is now settled that the rights of all the parties upon accommodation paper are the same as on transaction paper; with this single exception, that the person for whose accommodation the paper was issued cannot defend himself by the want of demand and notice. I am therefore of opinion that the judgment upon the case stated ought to be rendered for the defendant. But the other judges being of a different opinion, the judgment must be entered upon the verdict for the plaintiff.

[This cause was subsequently taken on writ of error to the supreme court, where the judgment of the court below was reversed. 3 Pet. (28 U. S.) 470.]

MAGRUDER (McDONALD v.). See Case No. 8,761.

MAGRUDER (RIGGS v.). See Case No. 11,-828.

MAGRUDER (THOMAS v.). See Case No. 13,904.

MAGRUDER (UNION BANK OF GEORGE-TOWN v.). See Case No. 14,360.

MAGUIRE (DALY v.). See Case No. 3,551.

MAGUIRE v. MARTINETTI. See Case No. 9,173.

MAGUIRE (TRASK v.). See Case No. 14,-145.

MAGUIRE (UNITED STATES v.). See Case No. 15,708.

MAHER v. The ACORN. See Case No. 10,-252.

MAHER (GREENLEAF v.). See Cases Nos. 5,779 and 5,780.