# The President &c. of CENTRAL BANK *versus* JOSEPH DAVIS.

A promissory note was indorsed first by the payee, and then, for the accommodation of the promisor, by the defendant, and over the payee's name were written the words, " waiving right to notice." The note was then discounted at a bank, at which the defendant was accustomed to do business, and the by-laws of which required the indorsers of notes discounted, to waive their right to notice on the back of the paper. *He'd*, that the waiver of notice on the back of the note in question, was the several act of the first indorser, and that the defendant was entitled to notice.

ASSUMPSIT by the plaintiffs as indorsees of a promissory note, against the defendant as indorser. The declaration contained various counts.

The note was as follows:

" Grafton, June 23d, 1835. Three months from date I promise to pay Moses Roberts or his order $ 500 at the Central Bank in Worcester ; it being for value received.

" (Signed,)     MILLOTTE BAKER."

(Indorsed on the back,) " Waiving right to notice.

" MOSES ROBERTS.

" JOSEPH DAVIS."

In a case stated, the execution of the note by Baker and the indorsement by the defendant, are admitted. The note was presented for discount by Baker, who had procured the indorsement of it by the defendant and also thereupon procured the discount of it, in renewal of a note due from them to the bank and which had been originally discounted for the benefit of the defendant. When presented by Baker for discount, the note was in the form above set forth, and it remained in the bank till its maturity ; but no notice of its non-payment was seasonably given to the defendant. If the evidence is admissible and pertinent, the defendant can prove that the indorsement of the name of Roberts, the payee, is a forgery. Immediately after the discount of the note Baker absconded, insolvent, and he has remained without the Commonwealth ever since. The defendant avers that the waiver of right to notice was placed upon the note, after he had indorsed it, by the promisor, in whose handwriting the indorsement is, without

32

the consent or knowledge of the defendant. This is denied by the plaintiffs ; and each party is left to the legal presumptions in his favor on that point.

The defendant was a stockholder of the bank and frequently did business there. The following is one of the by-laws of the stockholders ; " Notes, bills and drafts, may be discounted, but none to run for a longer term of time than four months, unless a majority of the board of directors shall otherwise order. In all cases where there are indorsers, they must waive their right to notice on the back of said paper."

It was the usage of the bank in regard to indorsers, to require them to waive the right to notice, but in a few instances the rule was not observed.

The money on the first note was received by the defendant, and not being paid at maturity, Baker was sued on it, by the direction of the defendant or his brother. After Baker was sued, he applied for a renewal of the note, and it was granted, upon condition that he should get the name of the defendant ; and thereupon the note now in suit was procured by Baker and the old note was given up to him.

*Oct. 5th.*    *Barton*, for the plaintiffs.

   *C. Allen*, for the defendant.

*Oct. 9th.*    MORTON J. delivered the opinion of the Court. The plaintiffs having derived their title to the note through the defendant's indorsement, he is estopped from denying the genuineness of the signatures of the antecedent parties. It is not competent for him to show that he had no legal title to the chose in action which, for a valuable consideration paid by the plaintiffs, he transferred to them. Peake's Ev. 221 ; 2 Stark. Ev. 267 ; Bayley on Bills, (Phil. and Sewall's 2d ed.) 149 ; *Lambert* v. *Oakes*, 1 Lord Raym. 443 ; *Critchlow* v. *Parry*, 2 Campb. 282 ; *Codwise* v. *Gleason*, 3 Day 12.

The origin of the note and the circumstances under which it was discounted by the plaintiffs, do not increase the defendant's liability. An accommodation bill or note is entitled to no peculiar favor, and the indorsers of such securities are holden in the same manner and upon the same principles as the indorsers of business paper. Bayley on Bills, (Phil. and Sewall's 2d ed.) 149 ; *Brown* v. *Mott*, 7 Johns. R. 361 ;

*Yeaton* v. *The Bank of Alexandria*, 5 Cranch, 49 ; *Violett* v. *Patton*, ibid. 142.

The undertaking of an indorser is conditional ; and unless the condition be performed, the undertaking does not become obligatory. The condition on which the indorser promises to pay is, that the holder shall use due diligence to collect the amount due, of the antecedent parties, and give seasonable notice of their delinquency to the subsequent indorsers. *Jones* v. *Fales*, 4 Mass. R. 251 ; *Copp* v. *McDougal*, 9 Mass. R. 5.

But as this condition is for the benefit of the indorser, he may waive it or agree to dispense with the performance of it, and obligate himself to pay without demand or notice. Such an agreement may be proved in the same manner and by the same kind of evidence that any other contract may be. And for this purpose circumstantial, as well as direct evidence, is admissible. One acknowledged mode of proof is by evidence of usage. An established usage of a bank, known to its customers, would be evidence against them. All who transact business at a bank must be presumed to agree to conform to their modes of doing business, so far as they are known to them. They incorporate its known usages into and make them a part of their contracts. They are therefore bound, not by the force of the usage, but by virtue of their own contracts. *Jones* v. *Fales*, 4 Mass. R. 252 ; *Widgery* v. *Munroe*, 6 Mass. R. 450 ; *Lincoln & Kennebeck Bank* v. *Page*, 9 Mass. R. 157 ; *The same* v. *Hammatt*, ibid. 159.

But we find no evidence of any usage of this bank upon the point in question. Their by-laws required all indorsers to " waive their right to notice, on the back of the paper." This was intended more immediately for the government of the directors ; but might, by them, be enforced upon their customers, by refusing to discount any paper which did not conform to it. But they did not uniformly do this. And so far from showing a usage to hold indorsers without notice, they required an express written agreement from them that they would dispense with notice.

The written waiver on the back of the note was the act of Roberts, the first indorser. He, being the payee, could alone

indorse the note. This transferred the legal interest to the de-fendant. The waiver was an essential part of the indorsement and materially affected the liability of the first indórser. It was his several act and does not bind any one else. If filled up as it must be supposed to be, it would read, I, M. R., "waiving right to notice," order the contents of this note to be paid to J. D. or order.

Then follows the blank indorsement of the defendant, which the holder has a right to fill up. But in doing it he is not at liberty to write just what he pleases over the name, but is bound by mercantile usage ; which on this point has the force and certainty of law, and clearly does not extend to a waiver of any of the legal conditions of indorsements.

In the decision of this case, we must act upon the assump-tion that the first indo sement is valid, as it is implied, by law, to be genuine, and no proof is admissible to show the contrary. And while the defendant is precluded from showing it to be a forgery, the plaintiffs cannot in this case be allowed to do it, to remit them to a prior remedy for the consideration paid Unless the first indorsement be deemed to be valid, the plain-tiffs show no title to the note. And they cannot, in this ac-tion, recover the money paid for it, treating it as a forged in-strument, because they did not buy it of the defendant or pay the consideration to him.

The defendant never having been notified of the dishonor of the note, nor waived his right to notice, is not liable upon it.

*Plaintiffs nonsuit.*