## UNITED STATES v. BALTIMORE & O. R. CO.

(District Court, W. D. Virginia. November 28, 1910.)

RAILROADS (§ 229*)—SAFETY APPLIANCE ACT—CONSTRUCTION—HANDHOLDS ON THE REAR OF YARD ENGINE.

    Safety Appliance Act (Act March 2, 1893, c. 196, 27 Stat. 531 [U. S. Comp. St. 1901, p. 3174]) § 4, provides that it shall be unlawful for any railroad company to use any car in interstate commerce that is not provided with secure grabirons or handholds in the ends and sides of each car for greater security to men in coupling and uncoupling cars. *Held* that, while the act was indefinite as to the number of handholds and as to the intended location thereof on the ends and sides of cars, it was not indefinite so far as it required handholds to be provided both in the ends and sides of cars, and that a yard engine used in interstate commerce was not equipped as required where no handholds were provided in the sides near the rear end of the tender though the tender was equipped with a running board and an uncoupling lever bar which ran nearly across the entire back of the tender, and was so located and of such a character that it might serve as a handhold; it not appearing that the presence of a handhold as required would not tend to greater security.

    [Ed. Note.—For other cases, see Railroads, Cent. Dig. § 743; Dec. Dig. § 229.*

    Duty of railroad companies to furnish safe appliances, see note to Felton v. Bullard, 37 C. C. A. 8.]

Action by the United States against the Baltimore & Ohio Railroad Company to recover certain penalties for alleged violation of Safety Appliance Act (Act March 2, 1893, c. 196, 27 Stat. 531 [U. S. Comp. St. 1901, p. 3174]) § 4, requiring railroad equipment to be fitted with handholds in the sides near the rear end. A verdict having been directed for the government, defendant moved to set the verdict aside. Motion denied.

Barnes Gillespie, U. S. Atty., and Thos. J. Muncy, Asst. U. S. Atty. R. Gray Williams, for defendant.

McDOWELL, District Judge. This is an action of debt brought for alleged violations of section 4 of the safety appliance act. Act March 2, 1893, c. 196, 27 Stat. 531 (U. S. Comp. St. 1901, p. 3174). The evidence for the government was to the effect that two yard engine tenders of the defendant, used in interstate commerce, had no handholds in the sides near the rear ends. This fact was not disputed, and the declaration alleged no violation of the act other than the absence of handholds in the sides near the rear ends of the tenders. The front corners of the tenders were rounded, and in these corners there were handholds. The defendant's witnesses contended that each of the tenders had across its rear end, and projecting slightly beyond its sides, a running board or low platform, and also that the uncoupling lever bar, which ran nearly across the entire end, was so located and of such character that it served as a handhold in the end of the tender. The government witnesses denied that one of the tenders was equipped with the platform, but admitted that the other one was. It was in evidence and undisputed that tenders are not uncoupled from their en-

gines except on rare occasions for repairs. The government witnesses denied that the equipment at the rear end above mentioned subserved the purpose of a handhold in the sides near the rear ends, while the tendency of the testimony for the defendant was to the contrary. It was also in evidence that running boards on yard engine tenders had been in use for years prior to the passage of the act. At the conclusion of the evidence a verdict for the government was directed. Desiring opportunity for further consideration of the proper construction of section 4 of the act, I suggested to counsel for defendant that he move to set aside the verdict. This motion was made and is now to be passed upon.

Section 4 of the act reads:

" * * * It shall be unlawful for any railroad company to use any car in interstate commerce that is not provided with secure grabirons or handholds in the ends and sides of each car for greater security to men in coupling and uncoupling cars."

In Denn v. Harnden, 1 Paine, 61, 9 Fed. Cas. 131, it is said:

"When the will of the Legislature is clearly expressed, it ought to be followed without regard to consequences. And a construction, derived from a consideration of its reason and spirit, should never be resorted to but where the expressions are so ambiguous as to render such mode of interpretation unavoidable."

See, also, Black, Interpretation Laws, pp. 35, 36; Yeaton v. Bank, 5 Cranch, 49, 55, 3 L. Ed. 33; Sturgess v. Crowinshield, 4 Wheat. 122, 202, 4 L. Ed. 529; U. S. v. Wiltberger, 5 Wheat. 76, 95, 96, 5 L. Ed. 37; Gardner v. Collins, 2 Pet. 58, 93, 7 L. Ed. 347; Beard v. Rowan, 9 Pet. 301, 317, 9 L. Ed. 135; Scott v. Reid, 10 Pet. 524, 527, 9 L. Ed. 519; Hadden v. Collector, 5 Wall. 107, 110, 18 L. Ed. 518; R. Co. v. Phelps, 137 U. S. 528, 536, 11 Sup. Ct. 168, 31 L. Ed. 767; Price v. Forrest, 173 U. S. 410, 427, 19 Sup. Ct. 434, 43 L. Ed. 749; Bolles v. Outing Co., 175 U. S. 262, 265, 20 Sup. Ct. 94, 44 L. Ed. 156; Knowlton v. Moore, 178 U. S. 41, 65, 20 Sup. Ct. 747, 44 L. Ed. 969.

In Hamilton v. Rathbone, 175 U. S. 414, 421, 20 Sup. Ct. 155, 158, 44 L. Ed. 219, it is said:

"Indeed, the cases are so numerous in this court to the effect that the *province of construction lies wholly within the domain of ambiguity*, that an extended review of them is quite unnecessary." ·

Section 4 of the act is undeniably and I think necessarily indefinite as to the number of handholds and as to the intended location of the handholds in the ends and sides of cars. But it is at least questionable if there is any indefiniteness or ambiguity in the section in so far as it requires that handholds be provided *both in the ends and sides of cars*. If the words "for greater security to men in coupling and uncoupling cars" were used to express the object in view in enacting this section, possibly the section is open to construction. But it was unnecessary to expressly state the object in view in enacting the section. That was perfectly obvious without using the above quoted language. Congress must have supposed railroad managers densely ignorant of the uses of handholds, if it was thought necessary to ex-

plicitly state the object in view in enacting this section of the law. To my mind the language above quoted was most probably used merely·to make as definite as the subject permitted the number and location of the handholds intended to be required by the section. Thus read, the statute absolutely requires handholds in the ends and sides of every car, but only in such number and so located as may further the security of men engaged in coupling and uncoupling cars. While thus read the statute is susceptible of construction as to the number of handholds and as to their location in the ends and sides of the cars, it is, as has been said, doubtful if it is open to construction in so far as it requires some handholds in both the ends and sides of each car. Of the handholds in the front corners of the tenders it should be said that there was no contention that they complied with the statute. They should therefore be disregarded. We have therefore before us a case in which it was undisputed that there were no handholds in the sides of the tenders. If, in this respect, the statute is not open to construction, it is manifest that a directed verdict for the government was proper. However, for the sake of argument, let us go further and assume that section 4 of the act as a whole is subject to construction.

It·is argued that the use of the words "for the greater security," etc., show that Congress did not intend to require handholds if they would be useless. This argument can be made only if the clause of the section in question were used to express the object in view in enacting the section. I have already advanced a reason for a doubt as to the propriety of making such assumption, and it is to be noted that we must ignore such doubt in order to even consider the argument.

The statement that Congress did not intend the performance of a useless act is but the premise for a conclusion, which is that the failure to provide handholds in the sides of the tenders was not a violation of the statute. This premise seems to me to contain an ambiguity. Is it an assertion that Congress did not intend to require the performance of an act which *some railroad experts* consider useless, or that Congress did not ·intend to require the performance of an act which *all men* agree would be useless? If the first reading is what is intended, it is to my mind a satisfactory answer to say that Congress may very readily be supposed to have intended to require the performance of an act which not only some but many railroad experts regard as useless. But if the premise is intended to assert that Congress did not intend to require the performance of an act which all men, or all competent railroad experts, agree would be useless, the first and most natural inquiry is whether or not such an assertion can with any sort of propriety be made concerning this section of the statute. A premise which assumes the truth of an untruth is certain to lead to an unsound conclusion, and a premise which assumes the truth of a disputable proposition leads us only to an equally disputable conclusion. And I am unable to agree that any case can exist as to which all men, or all competent experts, do or could agree that handholds in the ends and sides of cars, in addition to other appliances, would be under all circumstances entirely useless. Let us test this: If a box car had a ladder fastened· to its side near the rear end, one rung of which (supposed to be iron, of the best size and securely fastened) is at the best

possible location for a handhold in the side of the car, it might be contended that all would agree that a handhold in addition thereto would be utterly useless. To this I cannot assent. The ladder rung might perfectly subserve the purpose of a horizontal handhold. But under some circumstances an upright handhold placed at one or the other side of the ladder could afford additional security. The rung of the ladder might be well adapted to the needs of a man of average height running along the side of a moving car, while it might be of no use under some circumstances to a taller or a shorter man. A perpendicular handhold in addition thereto might easily mean the difference between life or death to some employé under some circumstances. Again take the case at bar in regard to the equipment of the rear end of the tender having the platform and uncoupling lever. It cannot be properly asserted, as it seems to me, that handholds in the ends of such a tender (placed below the uncoupling lever, for instance, or set in perpendicularly below the uncoupling lever and near to and on either side of the coupler head) would never be of any service. Assume that an employé is uncoupling a passenger car from such a tender —and this may imply uncoupling air hose, signal hose and possibly steam hose, to do which he would crouch or kneel on the platform. If it be assumed that the uncoupling lever is in all such tenders of such size and set far enough from the end of the tender (possibly a violent assumption) to serve as a handhold for men of average height, it seems to me impossible to contend that a properly placed handhold in addition to the uncoupling lever might not, under some circumstances, be of decided use to some brakeman not of average height or length of arm. So far as I can recall there has never come under my observation any type of tender, or freight car, or passenger coach, of which it can properly be said that handholds in the sides and ends, in addition to any and all other appliances, could not under some circumstances be of service to some employé while engaged in the work of coupling or uncoupling cars. And I believe it impossible to find such a car. While, therefore, it is admitted that Congress did not intend to require the performance of an act which all men agree would be under all circumstances entirely useless, still this truism does not seem to be applicable to section 4 of the act. The premise seems to me to assume to be true that which cannot be assented to as true; but if not it certainly assumes to be true a proposition of fact concerning which there is room for much difference of opinion. As it is not possible to properly assert that in enacting section 4 Congress was requiring the performance of an act which all men will agree would be entirely useless, it must be admitted that Congress may itself have passed judgment on the utility of handholds, in addition to other appliances, in both the ends and sides of all cars. If so, it is certain that neither judges nor juries have any power to review the judgment of Congress; and, if so, it would have been submitting to the jury the wisdom or want of it displayed by Congress to have submitted the case at bar to the jury. From the instructions tendered by the defendant I quote:

"If you believe from the evidence that secure grabirons or handholds placed in the sides near the rear ends in the said tenders, equipped with grabirons

across their rear ends and with projecting platforms as shown in the diagrams introduced by defendant, would not provide greater security to men in coupling and uncoupling cars, then you must find for the defendant."

This instruction could properly have been given only. in the event that the statute should be construed as if it had been written "grabirons shall be provided in the ends and sides of cars *if* they afford greater security to men in coupling and uncoupling cars."

To construe the statute as defendant contends we must read into the language chosen by the lawmakers a condition which is certainly not plainly implied, and we must assume that Congress intended to leave an important question of public policy to the possibly varying decisions of juries. And in construing the statute it must be borne in mind that Congress enacted the law to remedy a great evil. The loss of life and limb among railroad employés prior to the passage of the act was appalling. In view of this fact it must be admitted that Congress would more probably have intended an absolute compliance with the requirements of the act than a conditional compliance. Where the language of a statute, enacted to remedy a great evil, does not at least clearly imply that only a conditional compliance therewith was intended, and where the language chosen by the lawmakers is readily susceptible of a construction requiring an unconditional compliance with the requirements of the statute, it seems to me that the courts should adopt the construction which has the greater tendency to remedy the evil intended to be abated, where, as here, neither an absurd nor a mischievous consequence results.

In the case at bar there was an additional reason for refusing to leave any question to the jury. It was an undisputed fact (Record, p. 90) that footboards at the rear ends of yard engine tenders had been in use for years prior to the passage of the original act in 1893, and I know of no warrant for assuming ignorance on the part of Congress of this fact. Even if it could be assumed that the uncoupling lever bars in the rear ends of the tenders served the purposes of handholds in the rear ends, the defendant's contention in essence is that the use of an appliance known and used before the passage of the act made handholds in the sides of the tenders unnecessary and therefore not within the intent of the statute. Beyond cavil, the purpose Congress had in view was to promote, to further, to advance, to add to, the safety of employés. If the statute be construed as contended for by defendant, the safety of employés has been "promoted" by leaving the matter just as it stood prior to the passage of the statute. And even if the words "for greater security," etc., must be read solely as a statement of the object in view in enacting the fourth section of the act, it is difficult to perceive how the use of appliances which were used and known prior to the passage of the statute affords any *greater security* than was afforded when the statute was enacted.

As I construe the statute, it indicates that Congress has itself passed judgment on the utility of handholds in the ends *and sides* of cars, and it must be read as an absolute requirement. In a case, therefore, where it is admitted that there were no handholds in the sides of the cars, I am unable to perceive that there was any question of fact to be left to the jury.

For the purposes of the case at bar it may be admitted, for the sake of argument, that the intent of the statute is to require handholds in the sides of cars only if useful, and still there was good reason for directing a verdict for the government. It is doubtful if any of the witnesses for the defendant intended advisedly to say that handholds in the sides of the tenders and near the rear ends could under no circumstances be of some use. But if they intended to testify that a handhold in the side near the rear end would be under all circumstances of absolutely no use to an employé running along at night beside the moving tender and near its rear end, preparatory to uncoupling for instance, the testimony is, to my mind, simply unbelievable. A verdict for the defendant supported only by such evidence must have been set aside. R. Co. v. Moore, 121 U. S. 558, 570, 7 Sup. Ct. 1334, 30 L. Ed. 1022; Penna. Co. v. Whitney, 169 Fed. 572, 576, 95 C. C. A. 70; N. & W. v. Crowe, 110 Va. 798, 67 S. E. 518.

It follows that the motion to set aside the verdict should be overruled, and judgment entered in accordance with the verdict.

Since writing the foregoing, I have written an opinion in U. S. v. N. & W. R. Co., infra, which also deals with the construction of section 4 of the safety appliance act, and a copy thereof will be filed herewith.