## Staunton.

CHESAPEAKE & OHIO RAILWAY CO. v. ANDERSON.

OCTOBER 5, 1896.

1. INSTRUCTIONS—*Evidence Tending to Prove a Supposed Case.*—Where there is evidence tending to prove a supposed case, however inadequate, or to however little weight it may be entitled, it is best and safest for the trial court, if requested, to give an instruction covering the case supposed.

2. RAILROADS—*Trespassers—Expulsion by Brakeman.*—Expulsion of trespassers from the cars of a railroad company is not a duty incident to the position of brakeman, and authority to do so does not arise by implication. But if it has been the custom of brakemen to eject trespassers, and the railroad company knows or ought to know of that custom, authority to do so may be inferred, and the company be held liable for damages resulting from any improper and unlawful exercise of the authority by the brakeman.

3. RAILROADS—*Trespassers—Expulsion by Brakeman—Rules of Company.*— If the rules and regulations of a railroad company require brakemen to report trespassers on trains to their conductors, and it appears that the brakemen on the trains run by a designated conductor were in the habit of expelling trespassers from said trains without orders from the conductor, but in his sight or hearing, and with his approval and assent at the time, and it does not appear that the officers of the company knew of such habit, then all expulsions so made must be construed to be the acts of that conductor, and not violations of the rules and regulations of the company.

4. WRITS OF ERROR—*What not Accepted as True—Case at Bar.*—Although a writ of error is heard in the appellate court as upon a demurrer to the evidence, yet the court is not obliged to accept as true what, in the nature of things, could not have occurred in the manner and under the circumstances narrated, or what is not susceptible of proof. In the case at bar the accident could not have been caused in the manner stated.

Error to a judgment of the Circuit Court of Botetourt county, rendered June 4, 1895, in an action of trespass on

the case wherein the defendant in error was the plaintiff, and the plaintiff in error was the defendant.

*Reversed.*

This was an action by a youth sixteen or seventeen years of age, suing by his next friend, to recover damages for a personal injury to him while stealing a ride on one of the fast freight trains of the plaintiff in error. The defendant in error claims that he was kicked off the train by the front brakeman, while the train was in motion, and, in consequence, fell on the track and was run over and had his right arm and leg crushed so badly as to necessitate amputation. The residue of the evidence sufficiently appears in the opinion of the court.

After the evidence was all in the plaintiff asked for two instructions, to which the defendant objected, but which the court gave. The instructions were as follows:

## I.

"Although the jury may believe that Corbin Anderson, the plaintiff, had no business or right to be on defendant's train, and was a trespasser thereon, yet if they further believe that he was given no reasonable opportunity, without exposing himself to danger, but was forced to leave the train while the same was in motion, by reason of force exercised by the employees of said company, or any of them within the scope of their employment, and that in so leaving he received the injuries complained of, they must find a verdict for the plaintiff."

## II.

" The court instructs the jury that if they should find for plaintiff, in assessing damages for the plaintiff they may take into consideration his bodily and mental suffering arising from his injuries and proper compensation for the loss of his arm and leg, and for his being deprived by said injuries

and loss from engaging in, and following such business and calling as he might have done but for said injuries—and they may also take into consideration all the disadvantages under which he will labor for the balance of his life, by reason of said injuries and loss, but the jury cannot give to him an amount exceeding sixteen thousand dollars ($16,000.00), the amount claimed in plaintiff's declaration."

To which action of the court the defendant excepted.

The defendant then asked for the following instructions:

## I.

" If the jury believe from the evidence that at the time of the accident complained of, the plaintiff, Corbin H. Anderson, got on one of defendant's trains at or near Eagle Rock, and that in attempting to alight from said train or otherwise he fell and was injured, they are instructed that said plaintiff was a trespasser, and that they must find a verdict for the defendant."

## II.

" If the jury believe from the evidence that on or about the 5th day of August, 1894, the plaintiff got on one of defendant's freight trains while it was standing or moving along near Eagle Rock, and that he was kicked from said train while it was in motion and thereby injured, by one of defendant's brakemen, and that at the time of the accident W. H. Lewis was the conductor in charge of said train, and as such was the only person on said train to whom by the defendant's rules and regulations was committed the power to determine and direct who should be expelled from said train, and that said conductor did not order said brakeman to expel the plaintiff from the train, they are instructed that they must find a verdict for the defendant, although they may believe said brakeman was on duty at the time of the accident."

### III.

"If the jury believe from the evidence that on the day of the accident complained of E. R. Rudisill was a brakeman on the train of conductor Lewis, and H. A. Callaghan was a brakeman on the train of conductor Baker, and that said Rudisill and Callaghan, with the consent of their respective conductors, agreed at Eagle Rock that they would exchange places at Bessemer, and that said Callaghan got on the train of conductor Lewis at Eagle Rock, and while said train was moving between Eagle Rock and Bessemer and before it reached Bessemer, said Callaghan kicked the plaintiff from the train and thereby caused the injury complained of, they are instructed that the agreement at Eagle Rock to change places at Bessemer did not authorize said Callaghan to take the position of brakeman between Eagle Bock and Bessemer, and did not place him on duty on the train of conductor Lewis before it reached Bessemer, and that they must therefore find a verdict for the defendant."

### IV.

"Although the jury may believe from the evidence that at the time of the accident, it was a general custom of the defendant's brakemen to violate the rules of the defendant by expelling trespassers from defendant's train without express authority of the conductors in charge of such trains, they are instructed that such custom does not alter, or impair in any way the rules so violated, and does not impose any liability on the defendant in this case, unless the plaintiff proves that the defendant's superintendent or other officer in charge of that part of defendant's railroad where the accident occurred, had notice or actual knowledge of the said custom."

### V.

"If the jury believe from the evidence that the brakemen on the train run by ex-conductor J. N. Karnes were in the

habit of expelling trespassers from the said trains without orders from said Karnes, but in his sight or hearing, they are instructed that all expulsions so made in the sight or hearing of said Karnes must be construed to be the acts of said Karnes, and must not be construed as a violation of the rules or regulations of the defendant that require its brakemen to report such trespassers to their conductors."

To these instructions the plaintiff objected. The court sustained the objections to the instructions II. and V., and amended the first instruction by inserting after the words "he fell and was injured," the following words, to-wit: "without any force being used on the part of the company or its servants to cause said fall," and gave the instruction as amended.

The court also amended the third instruction by adding thereto the following words, to-wit: "But if the jury believe from the evidence that after said agreement was made, E. R. Rudisill, who was the front brakeman on the train, went into the caboose where conductor Lewis was and remained there, and that brakeman Callaghan took the place of front brakeman on top of the train, and conductor Lewis had reason to know and believe that brakeman Callaghan was so on top of the train, that placed brakeman Callaghan on duty as brakeman on conductor Lewis's train, and the jury are not required to find for the defendant under this instruction." The court gave this instruction as thus amended.

The court also amended the fourth instruction by striking out the concluding portion thereof, beginning with the words "the defendant's superintendent or other officer in charge," &c., and in lieu thereof inserting the following words, to-wit: "the defendant company, or some of its officers or agents who had authority to control the action of the brakemen had notice or knowledge of said custom," and gave the instruction as thus amended.

All of the rulings of the court on the instructions last aforesaid were excepted to by the defendant.

There was a verdict for the plaintiff for $2,845, which the defendant moved the court to set aside as contrary to the law and the evidence. But the court refused to set aside the verdict, and entered judgment thereon for the plaintiff, to which action of the court the defendant excepted.

*R. L. Parrish* and *William J. Robertson*, for the plaintiff in error.

*R. F. Mays* and *George K. Anderson*, for the defendant in error.

CARDWELL, J., delivered the opinion of the court.

This is a writ of error to a judgment of the Circuit Court of Botetourt county in favor of the defendant in error, an infant suing by next friend, against the plaintiff in error, the Chesapeake and Ohio Railway Company, for the sum of $2,845.

On the fifth day of August, 1894, the plaintiff in error, which is a common carrier, operating a line of railway through the State of Virginia and other States, ran one of its fast through freight trains, known as train number ninety-nine, from the town of Gladstone to the town of Clifton Forge, in Virginia, in charge of one crew. The crew which took charge of the train at Gladstone and was relieved at Clifton Forge, consisted, beside the engineer and fireman, of conductor Lewis, and two brakemen, Rudisill and Johnson. The train stopped at Eagle Rock (called some times Eagle Mountain) for the purpose of taking water. About the time it started from Eagle Rock, the defendant in error (the plaintiff in the court below), a youth between sixteen and seventeen years of age, got on a box car to steal a ride, and, according to his statement, he was standing between two box cars,

and after the train started he was kicked off by one of the crew of the train, and in consequence of the kick, fell on the track, was run over by one or more of the cars, and lost his right leg above the knee, and his right arm near the shoulder.

The grounds relied upon by the plaintiff in error in its petition for a reversal of the judgment, are:

1st. The rejection by the court of the second instruction asked for by the defendant at the trial.

2nd. The addendum or amendment made by the court to the third instruction.

3rd. The ruling of the court in rejecting the fifth instruction.

4th. The ruling of the court in giving two instructions asked for by the plaintiff; and

5th. The action of the court in overruling the motion of the defendant to set aside the verdict of the jury because contrary to the law and the evidence.

We will consider first the error assigned to the ruling of the court in giving two instructions asked for by the plaintiff. The first is as follows:

"Although the jury may believe, that Corbin Anderson, the plaintiff, had no business or right to be on defendant's train, and was a trespasser thereon, yet if they further believe that he was given no reasonable opportunity, without exposing himself to danger, but was forced to leave the train while the same was in motion, by reason of force exercised by the employees of said company, or any of them, within the scope of their employment, and that in so leaving he received the injuries complained of, they must find a verdict for the plaintiff."

The second instruction was as to what the jury should take into consideration in assessing damages, should they find for the plaintiff; and, if it was proper to give the first instruction, the second should also have been given.

It was said by Lee, J., in *Early* v. *Garland, &c.,* 13 Gratt. 9: " Where there is evidence tending to make out the supposed case, however inadequate in the opinion of the court, or to however little weight it may be deemed entitled, it is best and safest to give the instruction if it propound the law," citing *Hopkins* v. *Richardson,* 9 Gratt. 485; and *Farish* v. *Riegle,* 11 Gratt. 697–719.

With this rule sanctioned and approved as it has been in numerous decisions of this court (see the opinion of Riely, J., in *Michie* v. *Cochran, &c., ante,* p. 641, and the cases there cited), we cannot say that this assignment of error should be sustained. Whether the verdict of the jury was sustained by sufficient evidence, or was against evidence, is another and different question.

The second instruction asked for by the defendant and rejected, distinctly propounded the proposition that if conductor Lewis was in charge of defendant's freight train at the time of the accident, with sole power, under defendant's rules and regulations, to determine who should be expelled from the train, and if one of the brakemen on the train, without authority from the conductor to expel the plaintiff, kicked the plaintiff from the train and thereby caused the injury complained of, the act of the brakeman was outside the scope of his duties, and did not render the defendant liable for the injuries resulting from the act. In other words, it said to the jury that if the rules of the company authorized the conductor, Lewis, alone to expel the plaintiff, who was a trespasser, from the train, the brakeman Callaghan was without authority to do so, and therefore, though the jury found from the evidence that Callaghan did in fact eject the plaintiff and in such a manner as to cause the injury, the defendant company could not be held liable for the injury. It, in effect, excluded from the jury the right to take into consideration any evidence tending to show that, while under the rules of the company no authority was conferred upon a brakeman

to expel a trespasser from the train, it had been the custom of the brakemen to do so, and that this custom was known to the company and it acquiesced in it.

The question here presented is one of first impression in our State, and has been adjudicated by the courts of last resort in but few of the States of the Union.

The first instruction asked for by the plaintiff, and given by the court, recognized that the burden of proof was on the plaintiff to show that Callaghan was acting within the scope of his authority as brakeman when he ejected the plaintiff from the train.

We think, upon reason and authority, that the duty of a brakeman to expel trespassers from a freight train cannot be implied merely from the fact that he is in the service of the company in that capacity.

The word " brakeman " is defined by Webster as follows: " The man whose business it is to manage the brake on railways."

It was said by Chief Justice Shaw in *Farwell* v. *The Boston & Worcester R. R. Cor.*, 4 Metc. 49, cited by Story in his work on Agency, pp. 567–8: " To say that the master shall be responsible because the damage is caused by his agents is assuming the very point which remains to be proved. They are his agents to some extent and for some purposes; but whether he is responsible, in a particular case, for their negligence or misconduct, is not decided by the single fact that they are, for some purposes, his agents."

" Where there is no authority to do the act, the fact that the person doing it is the servant of another does not render the master liable." Wood's M. & S. 655. This latter rule, however, applies only in that class of cases where the master owes no duty to third persons—a case of a trespasser, as here, where the master owes only the duty that one human being owes to another. Wood's M. & S. 656. See also 2 Wood's Railway Law, (Ed. 1885) p. 1202, sec. 316.

In the case of *Marion* v. *Chicago, &c. R. Co.*, 59 Iowa, 428; 8 Amer. & Eng. R. R. Cases 177, and cited in note to Wood's M. & S., 656, it was held that where a brakeman, who only has authority to remove persons from the cars when so or- dered by the conductor, removes a person without such authority, his act is in excess of his authority, and the com- pany is not liable therefor.

In the case of *International, &c. R. R. Co.* v. *Anderson*, 82 Texas, 516; 53 Amer. & Eng. R. R. Cases 59, and 27 Amer. State R. 902, the Supreme Court of Texas held that there could be no recovery against a railroad company for an in- jury caused by the improper expulsion of a trespasser from a freight train by a brakeman; that, where a recovery is sought of the master for an injury inflicted by his servant, the plaintiff must show that the servant did the wrong while acting within the scope of his authority, and that a brake- man on a railroad train has no implied authority to eject trespassers from the cars.

To the same effect is the decision of the Supreme Court of Appeals of West Va., in the recent case of *Bess* v. *Chesa- peake & O. R. Co.*, 35 West Va. 492, 14 S. E. R. 234.

A different view, however, was taken by the Court of Ap- peals of New York in the case of *Hoffman* v. *N. Y. C. & H. R. Co.* 41 Amer. Rep. 337. It was there held that a recov- ery against the railway company for an injury to an eight year old boy, resulting from being kicked off the cars while the train was moving about ten miles an hour, was warranted. But it was said in the opinion, that there was a very sharp conflict in the evidence upon the question whether the boy was kicked off by the conductor, or the brakeman, and that the finding of the jury was not claimed to be unsupported by the evidence. It is true the court said that the conces- sion that the authority in the conductor to remove a tres- passer in a lawful manner is incident to his position, must be made in respect to the authority of a brakeman who finds

a trespasser on the platform of a car; but when the facts and circumstances of that case, as gathered from the opinion of the court, are considered, we do not think that the decision is authority in the case at bar.

The case of *Texas & Pacific Rwy. Co.* v. *Molten,* decided by the Court of Civil Appeals of Texas, reported in the 24 S. W. (Jan'y 8, 1894), p. 79, is cited by counsel for defendant in error with apparent confidence; but a careful examination of the case discloses, we think, that it does not sustain his contention.    In *Mother's Case* it was held:

1. "A trespasser improperly expelled from a car by a brakeman, who seeks to hold the company liable therefor, must show that the acts of the brakeman were within the scope of the authority in fact conferred on him by the company, since the duty of expelling trespassers rests *prima facie,* on the conductor."

2. "Though a brakeman may have no authority to use physical force to expel trespassers.from the car, yet, if he is clothed with authority to order them off, the company is liable for the death of a trespasser who was compelled to leave the train while in motion, by the brakeman's abusive language, threatening gestures, and threats of arrest."

3. "Evidence that a railroad company had knowledge of a custom of its brakemen to order trespassers from its cars, and to eject them therefrom, supports a finding by the jury that it had vested its brakemen with implied authority to order trespassers from the cars, so as to render it liable for the improper exercise of such authority by one of them."

The proof is conclusive in that case that it was usual for brakemen to put trespassers off the cars, and that it was a general practice among railroad brakemen to put them off. The court says this in the opinion, and adds:

"As stated in the findings of fact, no express authority was shown from the company to its brakemen in the premises, but no witness was introduced to show that it was not

fully aware of the common practice for them to give these orders, nor was the testimony of these witnesses in any manner contradicted or called in question. Under the circumstances, we think the evidence not only sufficient to justify the submission of the question of authority to the jury, but also sufficient to sustain their finding that it in fact existed. In fact, had not our Supreme Court already decided otherwise, we would have felt very much disposed to agree with the New York court in *Hoffman* v. *Railroad Co.*, 4 Amer. & Eng. R. R. Cases 537, in holding that the practice for brakemen to expel trespassers from railway cars is so general that they should be held to have implied authority to do so, in the absence of a showing to the contrary."

In the case at bar it was proved by all the employees of the defendant company on duty on the train number ninety-nine, from which the plaintiff alleged that he had been kicked, and by Carlisle, superintendent of that division of the company's road, that the custom of its brakemen was to obey the rules of the company, and to report trespassers to their conductors respectively, and that the custom at the time of this accident was not for brakemen to violate the rules, and to put trespassers off themselves.

The law in Virginia, as elsewhere, holds railroad companies, as common carriers, to the strictest responsibility in the selection of their servants and agents, and for the exercise of care, vigilance, and skill on the part of all persons employed by them. Consequently their servants and agents should be employed with a view to their intelligence, integrity, experience, and fitness to perform the duties that may be required of them by the rules and regulations of the company. To say that the railroad company shall not be allowed to prescribe the duties that the servant or agent it employs shall or shall not perform, would be to establish a harsh rule indeed, and one under which the master might be held liable for an injury inflicted upon one to whom he owes no con-

tractual duty, simply from the fact that the injury was inflicted by the wrongful act of a person who happens to be in his service.

We think that the defendant's instruction number two was properly rejected, but, while we are of opinion that the expulsion of trespassers from the cars by a brakeman is not a duty incident to the position he occupies, and that authority to do so does not arise by implication, we are also of opinion that if it was the custom of the brakemen to eject trespassers, and the railroad company knew or ought to have known of the custom, authority to do so might be inferred, and the company be held liable for damage resulting from an improper and unlawful exercise of the authority by the brakeman.

The next assignment of error is to the action of the court in making an addendum or amendment to the third instruction asked for by the defendant company. This instruction is predicated upon evidence adduced by the defendant company to show that while it had been agreed between Callaghan, a brakeman on an East-bound freight train standing on a side track at Bessemer, one mile West of Eagle Rock, and Rudisill, the front brakeman on train number ninety-nine, that they would change places, Rudisill to make the run East to Gladstone and Callaghan the run West to Clifton Forge, conductor Lewis did not assent to this arrangement, except on the condition that the change was not to be made till train number ninety-nine reached Bessemer, and that therefore Callaghan, although on this train when the accident to the plaintiff happened, and on the front of the train where it was the duty of Rudisill to be, was there without authority to take the position of brakeman between Eagle Rock and Bessemer, and that this did not place him on duty on train number ninety-nine before it reached Bessemer; but, in the view we take of the case, this assignment of error need not be further considered.

The defendant company asked for the following instruction, which the court also rejected:

"If the jury believe from the evidence that the brakemen on the trains run by ex-conductor J. N. Karnes were in the habit of expelling trespassers from the said trains without orders from said Karnes, but in his sight or hearing, they are instructed that all expulsions so made within the sight or hearing of said Karnes must be construed to be the acts of said Karnes, and must not be construed as a violation of the rules and regulations of the defendant that require its brakemen to report such trespassers to their conductors."

It had been proved, and there was no evidence to the contrary, that the rules and regulations of the defendant company require its brakemen to report trespassers on the train to their conductors, and the only evidence adduced by the plaintiff even tending to show that these rules and regulations had been violated, or that it was the custom of the brakemen to violate them at the time of the accident, or in fact at any time, is the testimony of one J. N. Karnes who by his own showing had been discharged from the service of the defendant company two and a half years prior to this accident for a violation of the rules of the company, or for neglect of duty. The effect of his testimony is that when he was acting as a freight conductor on another division of the company's railroad the brakemen on his train were in the habit of expelling trespassers from the train without orders from him, but it was done in his sight and hearing and with his approbation, and he does not say that any official of the road, other than himself knew of the practice on the trains run by him. On cross-examination the witness admitted that it was the duty of the brakemen to report to him when they found a trespasser on his train, and in answer to the question: "You only knew of the cases reported to you, or the cases when they put them off in your sight?" he says, "Yes, sir, that is all I remember of." Then in an-

swer to the question: "You don't know what anybody's custom has been since you left the road?" he says, " No, sir."

In the form that this instruction was offered it was perhaps proper to reject it, as it might have misled the jury, but upon another trial of the case should the evidence to which the instruction is directed be substantially the same as at the former trial, and the instruction is asked for in the form following, it should be given, viz:

If the jury believe from the evidence that the brakemen on the trains run by ex-conductor J. N. Karnes were in the habit of expelling trespassers from said trains without orders from Karnes, but in his sight or hearing, and *with his approval and assent at the time* they are instructed that all expulsions so made must be construed to be the acts of Karnes, and must not be considered as a violation of the rules and regulations of the defendant that require its brakemen to report such trespassers to their conductors.

The next and last assignment of error is to the action of the court in overruling the motion of the defendant to set aside the verdict as contrary to the law and the evidence.

The plaintiff was entitled to recover in this case only upon proof sufficient to show that he was in fact ejected from the train by one or more of the defendant company's servants under such condition, or in such a manner, as to cause the injuries for which he sues; and, if proved that he was so ejected from the train by a servant of the company, it must also be shown that the servant was acting within the scope of his authority.

The only testimony to the effect that the plaintiff was forced to leave the train is his own. His testimony is as follows:

Question by his counsel, " Tell the gentlemen of the jury all about it, how you came to get on, all about it? "

A. " I got on at the tank, got between two box cars and

was standing on the piece holding to the iron steps be-
tween the cars.    A man came along and said what are
you doing here you son-of-a—— ?    I just turned with my
back to him to get off, and he kicked me, and knocked me
off."

The plaintiff's own testimony placed the man who he
alleged kicked him off, on top of the car, right over his
head, while he (the plaintiff) was standing between two box
cars on the little platform that comes out from the end of
the bottom of the car, near where the drawheads come to-
gether, and shows that upon seeing the man, he (plaintiff)
turned his back to him to get off, and instantly received the
kick that caused him to fall upon the track, beneath the
wheels.    He further says the man had nothing in his hands;
" it felt like a kick," " I guess it was a kick."    It is shown
by uncontradictory testimony in the record that from the
top of the car where the man stood to the plaintiff's
shoulder, where he says he was kicked, it is three feet
three inches, and that it is impossible for a man to stand
on top of a car and kick down three feet three inches.
It is further shown that a kick, such as the plaintiff says
he received, would have cast him clear off the cars, and
not down on the track.    The act attributed to brakeman
Callaghan is shown by the evidence to be a physical impos-
sibility even were the train at rest, and the difficulty and
danger attending any effort to accomplish such a feat are
yet more obvious when the fact is recalled that the train
was in motion at the time.

It was pressed upon us with great earnestness that the
case is, under the law, to be considered as upon a demurrer
to evidence; but that rule, while it may and often does
require us to accept as true that which is capable of proof,
though the preponderance of evidence be ever so great
against it, cannot compel us to accept as true what in the
nature of things could not have occurred in the manner and

under the circumstances narrated, and may be said, therefore, to be incapable of proof.

Subjecting the evidence to the most rigid application of the rules governing demurrers to evidence, it is plain that the defendant company was guilty of no negligence connected directly or remotely with the injuries of the plaintiff, which were, so far as this record shows, due solely to his own reckless intrusion upon the defendant company's cars as a trespasser.

It was therefore error in the court below to overrule the motion to set aside the verdict of the jury because contrary to the law and the evidence, and its judgment must be reversed, the verdict set aside, and the cause remanded to that court for a new trial to be had therein in accordance with the views expressed in this opinion.

*Reversed.*