## 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

NORFOLK AND WESTERN RAILWAY CO. v. CROWE'S ADMINIS-
TRATRIX.

March 10, 1910.

Absent, Buchanan, J.

1. RAILROADS—*Personal Injury—Failure to Carry Headlight—Instruc-
tions.*—In an action to recover for a personal injury inflicted
at a grade crossing an instruction which tells the jury that if
they "believe from the evidence that the injury to the plaintiff
was caused solely by the failure of the defendant to have the
usual and customary headlight on its engine, they must find for
the defendant, whether such failure was negligent or otherwise,"
is of very doubtful interpretation, and calculated to mislead the
jury, and is, therefore, properly refused. This is especially
true where the instructions already given clearly expound the
law applicable to the case.

2. APPEAL AND ERROR—*Verdict Contrary to Conceded Facts.*—Courts
are not required to believe that which is contrary to human
experience and the laws of nature, or which they judicially
know to be incredible, and although a plaintiff in error occupies
the position of a demurrant to the evidence, yet if the verdict
of the jury is dependent for its support upon the testimony of
a witness which is contradicted by the conceded facts in the
case, it will be set aside and a new trial awarded. Testimony
in conflict with conceded or undisputed facts cannot, in the
nature of things, be true, and hence cannot form any basis for
a conflict upon which to rest a verdict. A court is not bound
to stultify itself by allowing a verdict to stand, although there
may be evidence tending to support it, where the physical facts
demonstrate such evidence to be untrue, and the verdict to be
unjust and unsupported in law and in fact.

Error to a judgment of the Circuit Court of Dinwiddie
county, in an action of trespass on the case. Judgment for the
plaintiff. Defendant assigns error.

*Reversed.*

The opinion states the case.

. *Geo. S. Bernard, Wm. B. McIlwaine* and *Theo. W. Reath,* for the plaintiff in error.

*G. S. Wing,* for the defendant in error.

CARDWELL, J., delivered the opinion of the court.

John T. Crowe was struck and killed at a late hour of the night on June 14, 1907, by a passenger train of the Norfolk and Western Railway Company, while crossing its track on the public highway, and this suit was brought to recover of the railway company damages on account of his death. The jury on the trial rendered a verdict in favor of the plaintiff for $9,000, and the court entered judgment in accordance with the verdict.

Upon three grounds this court is asked to review and reverse the judgment of the trial court: (1) Because the verdict was contrary to the law and the evidence; (2) because the court erred to the prejudice of the defendant in refusing to give to the jury a certain instruction offered by the defendant; and (3) because the damages awarded were excessive.

There are three counts in the declaration filed, and in the first and second counts the right of the plaintiff to recover was founded upon the negligence of the defendant in failing to ring the bell or sound the whistle on its engine as required by law; and the allegation of negligence in the third count is that the defendant also failed to have the usual and customary headlight on its engine, and that this act of negligence concurring with its alleged negligent failure to give the signals required by the statute when an engine approaches a highway crossing, caused the injury complained of.

It appears from the evidence that the deceased, a citizen of Dinwiddie county, living about five miles from Wilson station, on the defendant's line of railway, had come to the city of Peters-

burg and was expected to return on the train due to arrive at
Wilson station about midnight.   One W. S. Rutledge was in the
employ of the deceased, living at his home, and went to Wilson
station to meet him, reaching there several hours before time
for the train on which deceased was expected to arrive.   Shortly
after reaching Wilson, deceased got into an open buggy with
Rutledge, and drove along the county road in a westerly direc-
tion towards the crossing, something less than a mile from the
station, ·the county road running nearly parallel with the rail-
road and at no point more than a few hundred feet away from
it.   The roads were not good and the deceased, who was driving,
went along slowly, at a walk all the way, until he reached a point
eight steps, or from twenty to twenty-five feet, north of the
crossing.   When they reached this point both deceased and Rut-
ledge got out of the buggy and walked up to the railway track,
looking up and down the same, and listening for a train, but
neither saw nor heard any train coming.   They then walked
immediately back from the track eight steps to the buggy, Rut-
ledge getting in on one side and deceased on the other, and drove
at once across the track, when they were struck by a train, Rut-
ledge's arm being broken and the deceased being killed.   Rut-
ledge testifies that he did not hear the train approaching, and
did not know it was coming until the buggy was struck by the
engine and he was knocked unconscious; but he adds the rather
remarkable statement that after he was knocked unconscious,
and while he was flying through the air between the buggy and
the ground, he heard the train go by.   Rutledge says, however,
that before they reached the crossing he thought he heard a
train, but did not know from which direction it was coming,
and so remarked to his companion, the deceased; that from the
crossing they could at night see east down the track the usual
switch lights from a mile to a mile and a half, and when the
buggy was struck he and the deceased were looking directly
down the track east, the direction from which the train which
struck the buggy was approaching, but neither saw nor heard

the train approaching.  This train was running as the second section of passenger train No. 15, on which the deceased had come to Wilson, and, its customary headlight having gotten out of order, left Petersburg without any headlight except an ordinary hand lantern hung on the side of the part of the engine where the usual headlight should have appeared.  The train was running at a considerable speed; no lookout ahead of the engine was, or could be, kept under the circumstances.  All the witnesses testifying in relation to the matter agree that the grade from Wilson toward the road crossing was an ascending grade—in fact, the maximum grade of the defendant's railway track in that section of the country; and the uncontradicted proof is that an engine pulling the train in question, made up of heavy cars, must of necessity have made quite an exhaust in performing its work; in fact, the engineman's statement that the engine was laboring quite heavily is borne out by the testimony of two of plaintiff's witnesses, that they heard the train blow as it approached Wilson station, and heard the noise of the train as it ran from Wilson toward the crossing at which the accident occurred; that it made "an unusual quantity of fuss," and that they heard the noise the train made as it passed along toward the crossing, although these witnesses (husband and wife) were in bed in their house "four or five hundred yards right straight from the track," and the windows of the house were all down.  One of these (plaintiff's) witnesses, Mr. Bishop, was asked, "If that train had blown for the crossing, would you have heard it?"  And the witness replied, "Yes, sir, I would have heard it, of course, bound to have heard it. Everything was perfectly quiet." "Was there anything in the world to prevent your hearing it?"  A. "Nothing in the world."  Other witnesses testify as to the night being quiet and nothing to prevent the hearing of the approaching train as it came to the crossing on an up-grade, and the statement of the witnesses, Mr. and Mrs. Bishop, that when they heard the train sound its whistle it was for Wilson's station but accentuates the proof that the train approaching the crossing

was bound to have been heard by anyone at or near the crossing, especially by anyone looking and listening for the approach of the train.

We have then in the record as undisputed facts that the deceased and his companion, Rutledge, knew well the surroundings of the road crossing, frequency of passing trains, regular and irregular, both having resided in that neighborhood for a number of years; that the night of the accident was a still night; that no wind was blowing to obstruct sound; that the train was running rapidly up-grade and making more than usual noise; that the whistle of the engine blew as it approached Wilson station, and was heard by persons four or five hundred yards just off from the crossing; and that, by the maps and photographs introduced by both parties, the view from the crossing to the station and beyond was unobstructed. Plaintiff's witness, J. P. Dahlborn, a surveyor and photographer who made one of the maps, testified that the right of way was forty feet on each side of the railroad, and that a man standing in the county road thirty feet from the center of the crossing could see all the way to the station and beyond.

There is no dispute between counsel for the contending parties as to the law defining the reciprocal duties of a traveler on a highway approaching a railroad crossing and of those in charge of a train approaching the same.

Considering first whether or not the court erred in its ruling giving and refusing certain instructions to the jury, we find that the plaintiff asked for and obtained, without objection of the defendant, six instructions; that the defendant asked for four instructions, the first two of which were given, and the third also, with a modification, but the objection of the defendant to the modification is waived in this court.

The defendant's fourth instruction, which was refused, is as follows: "If the jury believe from the evidence that the injury to the plaintiff was caused solely by the failure of the defendant to have the usual and customary headlight on its engine, they

must find for the defendant, whether such failure was negligent or otherwise."

This instruction is of very doubtful interpretation, to say the least of it, and was calculated to mislead the jury, rather than to aid them in reaching a correct conclusion; especially is this true since the instructions given clearly expounded the well settled law applicable to the case; therefore, defendant's instruction No. 4 was rightly refused.

In considering the remaining assignment of error, necessary to be considered, which present the question whether or not the verdict of the jury is contrary to the law and the evidence, we leave out of consideration, as the familiar rule governing the consideration of the evidence requires, the testimony of eight or nine witnesses introduced by the defendant, some of the highest standing as to truthfulness and veracity, who reside in the vicinity where this accident occurred, having no connection whatever with the defendant company, or interest in the result of this controversy, who testified that the account of the accident given by the plaintiff's principal witness, Rutledge, at the trial of this case was altogether different from the account he gave of it immediately after its occurrence; his first account admitting that both he and the deceased (Crowe) heard the train coming, and put the blame for the accident on the deceased, saying among other things that "If Crowe had listened to him they would never have had any trouble"; that "they heard a train coming a little while before they got to the crossing, and they stopped in the road." "Well they (we) stood awhile, a few minutes, and Mr. Crowe was driving. Well, Mr. Crowe says, 'Well, I reckon we can make it, and I'll drive on' "; that "Mr. Crowe said he thought he had time to make it"; while the account given at the trial, and after the witness had brought and had then pending a suit against the defendant company for $15,000 damages by reason of injuries he received in the same accident, sought to exonerate himself and the deceased from all blame for the accident, and to show that it was the result of the

negligence of the defendant alone.    The only solace that the
witness takes for being thus shown up as occupying a position
at the trial wholly inconsistent with the position he took im-
mediately after the accident and for some time after, is, after
denying having made the statements imputed to him by the
witnesses, he claims on cross-examination that he had no recol-
lection, that his memory was not good, etc.

However, the case turns here upon the question whether or
not, upon the physical facts as to the surroundings of the place
where the accident occurred, appearing from plaintiff's own evi-
dence, the maps and photographs introduced and used by both
parties at the trial, and the uncontradicted evidence given in
the case, it can be accepted as true that while the witness, Rut-
ledge, and the deceased, occupants of an open buggy, could and
did see the switch lights down in the direction from which the
train was coming, a distance of at least one mile, they did not
see the lantern swinging beside where the usual and customary
headlight of the engine belonged, nor see or hear the train com-
ing on a straight track for the same distance, the view of which
and noise it necessarily made being wholly unobstructed, which
train was so close at hand that it struck the buggy occupied by
the witness and the deceased, which had only moved twenty-
five feet, and that, too, notwithstanding the fact that the noise of
the train, as we have seen, was so loud and distinct that two
of plaintiff's witnesses, Mr. and Mrs. Bishop, in their house
about five hundred yards from the railroad, with all the windows
of the house down, heard distinctly the noise made by the train
as it came from Wilson station past the crossing, the point of this
accident, and beyond.

The witnesses on both sides who testified in relation to the
matter state that the grade from Wilson toward the crossing
was an ascending grade, and the county surveyor, who actually
tested the grade with his instruments, stated that it was about
the maximum grade of the defendant's railway in that section of
the country.    It is proven also, and without contradiction, that

an engine pulling a train of heavy cars, as the train in question was, composed of a baggage car, one ordinary coach and three Pullman sleepers, must of necessity make quite an exhaust in performing its work, especially on an up-grade; and the engineer that ran this train says that the engine was laboring quite heavily, and his statement is not only not contradicted but borne out by plaintiff's witnesses, Mr. and Mrs. Bishop, the latter saying that the train was making more than the usual noise. Now, to accept as true the statement of the witness, Rutledge, upon which the verdict of the jury can alone be sanctioned, that he and his companion, the deceased, although they had both at twenty-five feet from the railroad track and again at the crossing, looked and listened for an approaching train and neither saw nor heard the train coming, although neither the sight nor the noise made by the train was obstructed, would, under the circumstances narrated, be to accept as true that which in the nature of things could not be true.

In such a case, when the fact testified to and the fact necessary to be proven in order to sustain the verdict of a jury could not in the nature of things be true, the authorities clearly hold that the verdict should be regarded as against the evidence, and be set aside.

This court, in *Anderson* v. *C. & O. Ry. Co.,* 93 Va. 665, 25 S. E. 947, held, that notwithstanding the rule required that the case in the appellate court was to be considered as upon a demurrer to evidence, "that rule, while it may and often does require us to accept as true that which is capable of proof, though the preponderance of evidence be ever so great against it, cannot compel us to accept as true what in the nature of things could not have occurred in the manner and under the circumstances narrated, and may be said, therefore, to be incapable of proof." See also *Harvey's Case,* 103 Va. 850, 49 S. E. 481; *Peters* v. *So. Ry. Co.,* 135 Ala. 533, 33 South. 332.

In the last-named case the opinion quotes from the opinion in *Artz* v. *Railroad Co.,* 34 Ia. 154, 159, where, in discussing

the question we are now considering it is said: "But it is urged by the appellee's counsel that the plaintiff testifies that he did both look and listen to see and hear the train, but did not; and that this testimony shows that he was not guilty of contributory negligence, or that at the very least it made that a question of fact for the jury. The difficulty, however, with the position is that, the conceded or undisputed facts being true, this testimony, cannot, in the very nature of things, be also true. It constitutes, therefore, no conflict. Suppose the fact is conceded that the sun was shining bright and clear at a specified time, and a witness having good eyes should testify at the time he looked he did not see it shine; could this testimony be true? The witness may have been told that it was necessary to prove in the case that he did look and did not see the sun shine. He may have thought of it with the desire that it should have been so. He may have made himself first believe that it was so, and this belief may have ripened into a conviction of its verity, and possibly he may testify to it in the self-consciousness of integrity. But after all, in the very nature of things, it cannot be true, and hence cannot in the law form any basis for a conflict upon which to rest the verdict. A man may possibly think he sees an object which has no existence in fact, but which it may be difficult, if not impossible, to prove did not exist, or was not seen. But an object and power of sight being conceded, the one may not negative the other." *Marland* v. *Railroad Co.,* 123 Pa. 487, 16 Atl. 747, 10 Am. St. Rep. 541; *Myers* v. *Railroad Co.,* 150 Pa. 386, 24 Atl. 747; *Payne* v. *Railroad Co.,* 136 Mo. 562, 38 S. W. 308; *Railroad Co.* v. *Pounds,* 27 C. C. A. 112, 82 Fed. 217.

In the recent work of Moore on Facts, the author in sec. 160, citing *Hook* v. *Missouri Pac. R. Co.,* 162 Mo. 569, 63 S. W. 366, says: "Courts are not so deaf to the voice of nature or so blind to the laws of physics that every utterance of a witness in derogation of these laws will be treated as testimony of probative value because of its utterance. A court will treat that

as unsaid by a witness which in the very nature of things could not be said."

In section 191 the same author says: "A conclusive presumption that a sound was heard by a person is quite often applied in the case of persons at or near a railroad crossing with a train thundering down on them."

The same author, citing a number of authorities, in a note to section 216, says: "Courts take judicial knowledge of the fact that railroad trains create a great deal of noise in their movements and that for some considerable distance such noise can be heard."

Again, the same author, in section 221, citing ample authority to sustain the text says: *"Presumption that train was heard* —It must be conclusively presumed that a pedestrian who stopped and listened within six feet of a railroad crossing could have heard a locomotive, a train which struck him going at the rate of fifteen miles an hour. In such a case his testimony that he did not hear the train was pronounced 'so contrary to the daily experience of common life, so, at war with the conceded and indisputable physical facts in the case, that neither courts nor juries can, without stultifying themselves, yield to it an iota of probative force or effect. It is a proposition too monstrously improbable for rational human belief. To argue to the contrary of this is to endeavor the transmutation of the impossible into possibility.' In another case the court said 'It almost seems incredible that a man can be within twenty feet of a railroad and not hear an approaching train, even although no whistle was sounded or bell rung.' Again it was held that a person within one hundred feet of the track, possessed of ordinary hearing, and listening attentively with nothing to obstruct the sound, cannot fail to hear a train approaching at thirty miles an hour."

Elliott on Railroads, in section 1703, citing as authority decisions in several States, under the headline, "Physical Facts," says: "It is an old saying that 'actions speak louder than

words,' and so there are sometimes physical facts present in a case sufficient in strength to overcome the evidence of witnesses. Well-established laws of nature and similar well-known scientific and physical facts of which the courts will take judicial knowledge may not only justify a trial court in directing a verdict or in setting aside a verdict and granting a new trial, but may also be sufficient to cause the appellate court to reverse the action of the trial court where it fails to give effect to such facts by directing a verdict or granting a new trial. Notwithstanding the general rule, which prevails in most jurisdictions, that the court, on appeal, will not weigh the evidence, neither the appellate court nor the trial court should stultify itself by allowing a verdict to stand, although there may be evidence tending to support it, where the physical facts are such as to demonstrate that such evidence is untrue, and the verdict unjust and unsupported in law and in fact. In a recent case the plaintiff testified that he stopped and looked and listened when about six feet from a railroad crossing and saw no engine, and that as soon as he stepped inside the first rail of the track an engine noiselessly approached and struck him; that his sense of hearing was perfect, and that there was nothing to obstruct sound or prevent him from hearing. There was also undisputed evidence that the engine and tender weighed eighty tons, had fourteen wheels and was running at the rate of at least twenty-five miles an hour. The supreme court held that it was a physical impossibility that the engine could move at that rate without making any noise, and that the plaintiff must have heard it if he looked and listened, as he testified that he did, and the judgment of the trial court on the verdict for the plaintiff was reversed. In another recent case the appellate court said that while it had no power to weigh the evidence, yet where the evidence which appears to be in conflict is nothing more than a mere scintilla, or where it is met by well-known and scientific facts, about which there is no dispute, this court will still exercise jurisdiction to review and reverse. So, where it was

necessary to assume, in order to support the verdict, that the plaintiff was fully nine feet high, the appellate court reversed the judgment and granted a new trial. In another case a verdict was set aside because the court knew that if the plaintiff had been exercising ordinary care and occupying the position he claimed he was occupying, he could not have been injured in the manner in which the undisputed evidence showed that he was injured. And in many other cases verdicts have been set aside because they could only be supported by assuming or believing something contrary to human experience or to the laws of nature. There are many facts of which courts *ex-officio* take notice, and neither averment nor proof will prevail against matters which are judicially known to the court. The courts will not allow the verdicts of juries to stand when they rest on evidence which the courts judicially know to be incredible. It is of the utmost importance, therefore, in many railroad cases, for the defendant to show the physical facts, and it is equally important to the plaintiff for him to come prepared, not merely to deny what the undisputed physical facts show must have been true, but to show, by some evidence at least, that the physical facts are not as claimed by the defendant or are not such as to conclude the plaintiff in the particular case."

The contention that the failure of the defendant to give the statutory signals and to have the usual and customary headlight on its engine lulled the deceased and Rutledge into the belief that they could safely cross the track ahead of the approaching train, of whose approach they were aware, is neither sustained by the facts in the case nor by the authorities. See *Smith's Adm'r* v. *N. & W. Ry. Co.,* 107 Va. 725, 60 S. E. 56; *Southern Ry. Co.* v. *Hansbrough,* 107 Va. 733, 60 S. E. 58.

We are of opinion that the verdict of the jury in this case is plainly against the evidence. Therefore, the judgment of the circuit court will be reversed, the verdict set aside, and the case remanded for a new trial.

*Reversed.*