# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉

## THE CHESAPEAKE AND OHIO RAILWAY CO. v. M. L. BARLOW.

January 15, 1931.

Present, Campbell, Holt, Epes, Hudgins and Gregory, JJ.

*Leake & Spicer,* for the plaintiff in error.

*George E. Haw,* for the defendant in error.

HUDGINS, J., delivered the opinion of the court.

This is an action to recover damages for personal injuries and for the loss of an automobile sustained at a grade crossing by a collision between an automobile driven by the defendant in error and a freight train operated by the plaintiff in error. There was a verdict and judgment for the plaintiff below; the railway company assigns error. The parties will be referred to in the positions they occupied in the trial court.

The physical facts at and around the crossing are as follows. The right of way of the defendant company extends approximately east and west, with the public highway

crossing it at right angles. Just south of the southern line of the right of way and about seventy-five feet east of the highway is a building referred to as Campbell's store. The right of way, which is approximately eighty feet wide, is on a level slightly above the highway; there are three sets of rails at this point, with the main-line track in the center. From a point thirty feet south of the crossing there is an unobstructed view of the tracks to the east for some 450 feet. The crossing is near the western terminus of a curve and 165 feet from the west end of the station platform at Hanover.

The evidence is in conflict as to whether the crossing signals were given. The verdict of the jury settles this conflict against the defendant.

There are numerous errors assigned, but in our view of the case it is only necessary to consider whether there was any causal connection between the negligence of the defendant and the injury the plaintiff suffered.

The accident occurred between 8:45 and 9:15 on the night of March 20, 1928. The plaintiff came out of Campbell's store and started his Chevrolet car, which was parked about fifteen feet in front of the store and facing the east, turned around, and attempted to cross the right of way from the south. He was struck by a freight engine pulling from twenty-five to thirty freight cars.

The defendant contends that the evidence of the plaintiff himself conclusively shows that his negligence was the sole proximate cause of the injury. He accounts for the accident thus:

"Q. Tell what you did when you started across the crossing.

"A. I started across; I looked, I don't know how many feet, but just before I got to the side-track *I looked good both ways*, didn't hear any train, didn't hear a sound. I was still in second gear. I pulled up the grade and *looked*

*all the time* like anybody else would be doing. I got about that far across. (Indicating.) There was a big light at Campbell's store and dark as a dungeon down the railroad. Just as I got about two feet, with the front wheels across the main line, the light swung around in my face. Then no bell was ringing and I hadn't heard a sound. I knew I was hit. The last thing I remember I said to myself: 'If the bell had been ringing I would not have been hit.' (Italics supplied.)

"Q. You don't know how far the train was from you when the light struck you?

"A. No, but it was not very far. There is a curve around there. It was throwing the light the other way all the time. As soon as it straightened up it was right at me. When it threw the light on me I knew the train was right at me.

"Q. It was throwing the light towards Jacob's store?

"A. Yes, sir.

"Q. The light did not hit you until just before it struck you?

"A. It looked like it was about ten or five yards.

"Q. Was there anything at Campbell's store which would interfere with your seeing clearly the light coming up the track—any light at Campbell's store?

"A. *Nothing but the light he had.*" (Italics supplied.)

He stated further that he was running very slowly, about two or three miles an hour, and as he reached the first rail of the side-track increased his speed to about five miles an hour, and that at the speed he was going he could have stopped his car within two feet.

"Q. Now, Mr. Barlow, the first track that you passed, which I believe is known as the passing-track, you didn't see any train or any cars on that track, did you?

"A. I don't remember seeing any.

"Q. You saw the headlight on the engine?

"A. I don't remember. The light blinded me. I saw it coming around in my face. It was like somebody throwing a flashlight in your face.

"Q. It was a very strong light, was it?

"A. Yes, sir."

No one knows whether the plaintiff looked, and continued to look, for trains as he neared the tracks except the plaintiff himself. We accept, then, as an established fact that as he approached the main-line track the plaintiff looked and continued to look for trains. From his evidence, however, it will be seen that his account of what he saw is not clear and positive. He says that the train was throwing the light the other way all the time, as the headlight straightened up the train was right on him. When asked the direct question if he saw the headlight of the engine his answer was: "I don't remember. The light blinded me. I saw it coming around in my face." And again he said: "It was so dark down that track, either this light from Jacob's store or this light from the train was over there, I don't know which it was. It was dark down there; you couldn't see anything."

Jacob's store is about 100 feet north of the main-line track, from a point 275 feet east of the crossing. If the light from the engine was shining on Jacob's store when the plaintiff was within forty feet of the main-line track the engine was necessarily east of the depot and some distance from the crossing, in which event, at the speed the train was running, the plaintiff would have had ample time to cross the track in safety.

It is contended, however, in behalf of the plaintiff that he did not see the light from the on-coming train, and there are two reasons advanced in explanation of his failure to see. One is that the light at Campbell's store obstructed his vision. The proof shows that on the north side of the store, toward the railway right of way and back from the

front of the store, there was an electric light of forty or fifty watt power, and in front of the store there was another light of sixty or eighty watt power. When the plaintiff first got in his car to leave the store its light may have obstructed his view slightly, but as he got further from the store and nearer the main-line track the influence of the store light necessarily grew less, and it is incredible to us that the illumination of this light was sufficient to prevent a person with normal vision, in the absence of fog or mist, if he looked, from seeing the strong headlight of a railroad engine as near as this one must have been. .

The uncontradicted evidence shows that the train was approaching the crossing on a curve at a speed of fifteen miles an hour. The degree of the curve is not given. The plaintiff was familiar with this crossing and knew the curve was there. The evidence further shows that the rays from the headlight at a distance of from fifty to seventy-five feet from the engine were eighty feet wide, and expanded as the distance from the engine increased. A quarter of a mile from the engine an object within the light radius as large as a man could be seen. As the engine neared the crossing the rays of light were directly in front of the plaintiff and if not shining on the track were swinging towards him.

Comparing the respective speed at which the train and the automobile were traveling we find that when the automobile was thirty feet from the center of the main-line track the train was five times as far away and approaching five times as rapidly, and yet the plaintiff claims he did not see the headlight or rays of light therefrom and was unaware of the approaching train. Under these circumstances to believe that the plaintiff looked, and continued to look, and yet failed to observe the on-coming train is contrary to the common experience of mankind.

This court, in C. & O. Ry. Co. v. Anderson, 93 Va. 665, 25 S. E. 947, 950, held that notwithstanding the rule re-

quired that the case in the appellate court was to be considered as a demurrer to evidence, "that rule, while it may and often does require us to accept as true that which is capable of proof, though the preponderance of evidence be ever so great against it, cannot compel us to accept as true what in the nature of things could not have occurred in the manner and under the circumstances narrated, and may be said, therefore, to be incapable of proof." See, also, *Harvey's Case*, 103 Va. 850, 49 S. E. 481; *Peters* v. *So. Ry. Co.*, 135 Ala. 533, 33 So. 332.

In *Artz* v. *Railroad Co.*, 34 Ia. 153, 159, it is said: "A man may possibly think he sees an object which has no existence in fact, but which it may be difficult, if not impossible, to prove did not exist, or was not seen. But an object and power of sight being conceded, the one may not negative the other." See *Maryland* v. *Railroad Co.*, 123 Pa. 487, 16 Atl. 623, 624, 10 Am. St. Rep. 541; *Payne* v. *Railroad Co.*, 136 Mo. 562, 38 S. W. 308; *Railroad Co.* v. *Pounds*, 27 C. C. A. 112, 82 Fed. 217.

In Moore on Facts, section 160, citing the case of *Hook* v. *Missouri Pac. R. Co.*, 162 Mo. 569, 63 S. W. 360, 366, it is said: "Courts are not so deaf to the voice of nature or so blind to the laws of physics that every utterance of a witness in derogation of these laws will be treated as testimony of probative value because of its utterance. A court will treat that as unsaid by a witness which in the very nature of things could not be said."

In the case of *N. & W. Ry. Co.* v. *Strickler*, 118 Va. 153, 86 S. E. 824, 825, it is said: "It is impossible that the plaintiff could have traversed the thirty feet, listening and looking, over a clear track of 1,500 feet, and not have seen an approaching motor truck until it was too near for him to stop short of the track, or for the truck to avoid the collision. He says that his vision was good. That he looked, as claimed, continuously while passing over the thirty feet, and did not see the motor truck approaching

anywhere within the distance of 1,500 feet, is an incredible statement that cannot be accepted. He could have stopped within three or four feet of the track and avoided the accident. It was his duty to look and listen for railroad vehicles. Upon the plaintiff's own statement, the conclusion is unavoidable that he failed to look at any point within thirty feet of the track, or, if he looked, that he failed to heed the approach of the motor truck, which he must necessarily have seen. * * * That the plaintiff both looked and listened so as to make his looking and listening effective, and neither saw nor heard the rapidly approaching motor at any point within the clear unobstructed view of 1,500 feet, is wholly incredible.

■ "This court has repeatedly declared that courts are not required to believe that which is contrary to human experience and the laws of nature, or which they judicially know to be incredible. Though the case be heard as upon a demurrer to the evidence, the court will not stultify itself by allowing a verdict to stand, although there may be evidence tending to support it, when the physical facts demonstrate such evidence to be untrue, and the verdict to be unjust and unsupported in law and in fact." *C. & O. Ry. Co.* v. *Anderson,* 93 Va. 650, 25 S. E. 947; *Harvey* v. *Commonwealth,* 103 Va. 850, 49 S. E. 481; *N. & W. Ry. Co.* v. *Crowe's Adm'r,* 110 Va. 798, 67 S. E. 518; *Pennsylvania R. Co.* v. *Jenkins,* 119 Va. 186, 89 S. E. 96, 97; *Southern Ry. Co.* v. *Mason,* 119 Va. 256, 89 S. E. 225, 229; *Virginia & S. W. Ry. Co.* v. *Skinner,* and *Virginia & S. W. Ry. Co.* v. *Harris,* 119 Va. 843, 89 S. E. 887, 888; *Hancock* v. *N. & W. Ry. Co.,* 149 Va. 829, 141 S. E. 849; *N. & W. Ry. Co.* v. *Hardy,* 152 Va. 783, 148 S. E. 839.

The plaintiff, while not conceding that he was aware of the on-coming train, insists that his case is controlled by the following Virginia decisions:

*Gregory* v. *Seaboard*, 142 Va. 750, 128 S. E. 272. In that case Gregory testified that when he was at a distance of from eighty-four to one hundred feet of the crossing he looked in the direction from which the train was approaching and saw no train, from that time until just before the impact he looked in the opposite direction, and just as the train was almost on him he was aware of its approach and jumped from the moving truck. The court held that he was guilty of negligence in not looking in both directions, but there was nothing to indicate that he was aware of a fast-approaching passenger train and he was allowed recovery. The circumstances show that the failure to give the crossing signals contributed to the plaintiff's injury.

In the case of *Etheridge* v. *N. So. Ry. Co.*, 143 Va. 789, 129 S. E. 680, Etheridge in broad-open daylight approached a crossing without looking in either direction for the approach of the train. He relied upon an automatic crossing signal to warn him of the danger and was unaware of the approach of the train until it was too late for him to stop his car and he ran into the side of the train and was injured. The court held that he was guilty of negligence, and whether his negligence was the sole proximate cause of the injury was a question for the jury.

*C. & O.* v. *Gayle*, 132 Va. 433, 435, 112 S. E. 785. The evidence was that the driver of the machine was lulled into a sense of security because the stationary warning bell was not ringing and he did not discover the approaching train until the danger was imminent and the injury unavoidable. There is no evidence that the plaintiff's driver in that case looked or listened for the approach of the train. The inference follows that if the statutory signals had been given he would have heard them and thus been made aware of the danger.

*N. & W. Ry. Co.* v. *Hardy*, 152 Va. 783, 148 S. E. 839, *supra*. The facts in that case were that Hardy was killed

in attempting to cross the right of way in the daytime. For a space of fifty feet before reaching the tracks he had a clear view of an approaching train for a distance of 550 feet, and when within twenty feet of the track he could have seen 1,200 or 1,300 feet in the direction from which the train was approaching. The only obstructions in his line of vision were a slight depression in the right of way, not enough to obscure the view of an object as tall as a railway engine, a signal post, a crossing sign and some freight cars 750 feet from the crossing. It was held that he was guilty of contributory negligence as a matter of law. There is no evidence that he looked for, or was aware of, an approaching train.

The case of *So. Ry. Co.* v. *Johnson*, 151 Va. 345, 146 S. E. 363, 365, presents a situation very similar to that presented in the *Hardy Case*, except that the collision occurred at night. The driver of the machine was killed. The jury found that no signals were given and, as in the *Hardy Case*, there was no evidence that the driver looked or that he was in any manner aware of the approaching train. The limitation upon the right to recovery was stated thus: "If failure to give the signals in any way contributed to the accident, then, however grossly negligent the driver was, he is entitled under section 3959 to recover, subject to mitigation of damages in proportion to his negligence."

This court has consistently construed section 3959, Code, to mean that there must be a causal connection between the failure to give the statutory signals and the injury, but in no case has a recovery been allowed where the undisputed evidence showed that the plaintiff's negligence was the *sole* proximate cause of the collision. If the plaintiff sees that the train is approaching, the blowing of the whistle and the ringing of the bell can give him no further information, and if he attempts to cross the track and is injured the accident is the result of his own negligence,

and the negligence of the company in failing to give the statutory signals cannot be said to be a contributing cause of his injury.

It appears from the evidence that the verdict of the jury and the judgment of the court are plainly wrong. The judgment must be reversed, the verdict of the jury set aside, and final judgment will be here entered for the plaintiff in error.

*Reversed.*